## EDWARD F. LOVEJOY *vs.* AUSTIN WHITCOMB.

Essex. November 9, 1899. — November 29, 1899.

Present: HOLMES, C. J., KNOWLTON, MORTON, HAMMOND, & LORING, JJ.

*Slander — Declaration — Action — Privileged Communication — Verdict.*

The declaration in an action for slander alleged that the following words were spoken of the plaintiff by the defendant: " What a pity we (meaning said church of which said defendant was a member) have got such a man for a director. His moral character is not good. You (meaning the person with whom he was conversing) must have heard about his being caught with the house girl. I have got proof enough. I have been looking around and I know its so. He is vile; there is no doubt but what it is so." *Held,* on demurrer, that the declaration charged the defendant with an actionable slander.

A false and disparaging statement concerning one in his trade, occupation, or calling is actionable in itself, and the person concerning whom such a statement is made, although he should not be able to show that he suffered damage or loss, would still be entitled to recover.

Statements made by one member of a church choir to another in regard to the character of the director of the choir are not privileged.

At the trial of an action, the declaration in which contained two counts, the following verdict was returned: " The jury find for the plaintiff and assess the damages in the sum of one thousand and four hundred dollars. The jury find on the second count in the declaration and assess the damages in the sum of one dollar." Thereupon the judge put to the jury certain questions intended to remove the uncertainty of the verdict. In accordance with the answers of the foreman in regard to the intention of the jury, and with the assent of all his fellows, the first part of the verdict was amended by inserting the words " on the first count" after the words "find for the plaintiff," and the amended verdict was affirmed; but the record did not show any disposition of the second count, and left it uncertain whether the jury intended their finding on that count to be for the plaintiff for nominal damages, or for the defendant. *Held,* that the proceedings in amending the verdict on the first count were proper, but that there was error in failing to include and record the verdict on the second count.

TORT, in two counts, for slander in accusing the plaintiff of the crime of adultery. At the trial in the Superior Court, before *Lilley*, J., the jury returned the following verdict : " The jury find for the plaintiff and assess the damages in the sum of one thousand and four hundred dollars. The jury find on the second count in the declaration and assess the damages in the sum of one dollar." The defendant, besides appealing from an order overruling a demurrer to the declaration, alleged exceptions, which appear in the opinion.

*D. N. Crowley*, (*D. W. Quill* with him,) for the defendant.

*J. W. Porter*, (*C. A. Sayward* with him,) for the plaintiff.

KNOWLTON, J. The defendant appealed from the order of the court overruling his demurrer to the plaintiff's declaration, and after a trial before a jury, filed a bill of exceptions. The first question is whether the allegations of the declaration charge the defendant with an actionable slander. The language set out in the first count is as follows : " What a pity we (meaning said church of which said defendant was a member) have got such a man for a director. His moral character is not good. You (meaning the person with whom he was conversing) must have heard about his being caught with the house girl. I have got proof enough. I have been looking around and I know its so. He is vile; there is no doubt but what it is so." It contains several disparaging expressions, no one of which, taken alone, would distinctly charge the crime of adultery. When ambiguous language is used and there are several statements made by the speaker at the same time which throw light upon the language of doubtful meaning and tend to show the sense in which it is used, the statements and the circumstances under which they are made may well be considered by the jury for the purpose of determining the meaning. In the present case the defendant's words begin with a strong implication that the plaintiff is an unfit man to act as the musical director of a church choir ; then comes the charge that he is of bad moral character, followed by a statement of a specific fact to show in what particular his character is bad. He speaks of " proof " which is a word that points to accusation and a hearing, and he adds with emphasis that the man is vile. We are of opinion that this language, taken together, fairly implies that

the plaintiff had been guilty of criminal intercourse with the house girl. If the only words were a charge that he was "caught with the house girl," it would be impossible to know how much was meant by the word "caught." In *Snell* v. *Snow*, 13 Met. 278, it was decided that the words "bad girl" do not import criminality; but in *Riddell* v. *Thayer*, 127 Mass. 487, 490, the words "bad woman" were used under such circumstances as to constitute an implied charge of adultery. The word "caught" with the accompanying expressions would ordinarily be understood to mean discovered in such a position that adultery would be inferred. The demurrer was rightly overruled and the judge rightly refused to take the case from the jury.

The jury were correctly instructed that a false and disparaging statement concerning one in his trade, occupation, or calling is actionable in itself, and the person concerning whom such a statement is made, although he should not be able to show that he had suffered damage or loss, would still be entitled to recover. *Morasse* v. *Brochu*, 151 Mass. 567. *Dooling* v. *Budget Publishing Co.* 144 Mass. 258. *Boynton* v. *Shaw Stocking Co.* 146 Mass. 219.

The instructions requested which the court refused to give all relate to the defendant's contention that the statements were privileged. The requests for instructions were founded on an assumption that if the defendant acted in good faith and with a reasonable purpose to advance the interests of the church, he was not liable, and also that it was the defendant's duty to make known to other members of the choir what he had ascertained in regard to the musical director. There was no such relation between the defendant and the other members of the choir as to make it his duty to inform them what he knew or had heard in regard to the character of the plaintiff. The members of the choir were employees of the church under a contract to assist at its services. They had no duty to perform or interest to serve which made it necessary or proper to inform them that the plaintiff had been guilty of adultery. The other members of the choir owed such duties to the church as grew out of their contracts. They were not responsible for the character or conduct of the plaintiff. If the plaintiff had become an unfit per-

son to continue in his place at the church, it was the duty of the defendant and the other officers of the church to remove him, not to publish to his associates rumors against his character. The defendant was bound at his peril not to make false defamatory statements about the plaintiff, except in the performance of some duty of inquiry or information. There was no error in this part of the case.

The defendant objected to the taking of the verdict because it · was "obscure, uncertain, and contradictory." Thereupon the judge put to the jury certain questions intended to remove the uncertainty. In accordance with the answers of the foreman in regard to the intention of the jury, and with the assent of all his fellows, the first part of the verdict was amended by inserting the words "on the first count" after the words "find for the plaintiff." This was a proper proceeding, and in accordance with the well established practice in such cases. *Mason* v. *Massa*, 122 Mass. 477, 480. *Brown* v. *Dean*, 123 Mass. 254, 266. There is no reasonable doubt that the verdict on the first count as amended, agreed to, and confirmed by the jury, correctly expresses their finding.

The only difficulty in the case arises under the second count. The jury returned an additional verdict on that count for nominal damages. In reply to one of the questions of the judge, the foreman said that the jury intended to return a verdict for the plaintiff on the second count in the sum of one dollar. Attention was then directed to the verdict on the first count, and after the verdict on that part of the case had been amended so that it made the finding of $1,400 damages a finding upon the first count alone, there was a question by the judge that seems to assume, although its meaning is not clear, that the entire verdict was to be a finding for the plaintiff on the first count. The jury assented, and the amended verdict, which relates to the first count alone, was affirmed. The record does not show any disposition of the second count, and it may be inferred from the record that the jury failed to agree upon it and that it stands for trial hereafter. From the narrative of what occurred between the judge and the jury, it seems plain that they considered the second count as well as the first, and that their verdict should have embraced it. Whether finally they

intended their finding to be for the plaintiff for nominal damages on that count, or for the defendant, is not clear. The defendant objected, and excepted to all that was done in amending and recording the verdict. We are of opinion that the proceedings were erroneous, probably by inadvertence, in failing to include and record the finding of the jury on the second count. The defendant was entitled to have the second count disposed of as well as the first, so that he would not be subject to another trial.

The order overruling the demurrer is affirmed. Unless the plaintiff elects to file a waiver of all claims under the second count, the verdict must be set aside and a new trial granted. If such a waiver is filed the entry will be,

*Exceptions overruled.*