ANDREW J. ROBINSON *vs.* WILLIAM J. COULTER & another.

Worcester. September 29, 1913. — October 21, 1913.

Present: RUGG, C. J., MORTON, HAMMOND, SHELDON, & DE COURCY, JJ.

*Libel and Slander. Pleading, Civil,* Demurrer.

The publication of a defamatory statement in writing, which imputes to a building contractor a dishonest failure to comply with the requirements of a contract to erect a schoolhouse for a town, is an actionable libel, and, being in disparagement of the contractor's character and not merely of his work, no proof of special damage is required to maintain the action.

In an action by a building contractor, who had a contract to build a schoolhouse for a town, against the proprietor of a newspaper for the publication of an alleged libel charging the contractor for the building of the schoolhouse, not mentioning the plaintiff by name, with a dishonest failure to comply with the requirements of his contract, it is a question of fact for the jury whether the article was published of and concerning the plaintiff.

Upon a demurrer to the declaration in an action of tort for libel, where the publication alleged is libellous without proof of special damage, the question whether the declaration contains a sufficient allegation that the plaintiff suffered special damage cannot be raised unless it is assigned as a cause of demurrer.

Upon a demurrer to the declaration in an action by a building contractor, who had a contract to build a schoolhouse for a town, against the proprietor of a newspaper for the publication of an alleged libel charging the plaintiff with a dishonest failure to comply with the requirements of his contract, where the declaration contains an averment that the words were published maliciously, it is not open to the defendant to contend that the statements were true or that they were privileged as a fair and reasonable comment and criticism on a matter of public interest, these being matters of defense which can be availed of only when they are set up in an answer, and which, even if they were open, would constitute no defense because the allegation of malice is admitted by the demurrer.

TORT for an alleged libel. Writ dated March 24, 1911.

The plaintiff's declaration, as amended, was as follows:

And the plaintiff says that on March 22, 1911, and for many years prior thereto, he was a contractor and builder carrying on his business in the town of Clinton in said County of Worcester, and in the towns in the vicinity of said Clinton; that he depended upon the income and profit of said business for his livelihood and enjoyed a good name and reputation for honesty and fair dealing in said business; that in March, 1910, the plaintiff, as a contractor and builder, entered into an agreement with the inhabitants of the said town of Clinton to build a public school building in said Clinton, called the Acre schoolhouse, according to certain plans and specifications, subject to such changes and alterations as might be directed by the architect of said building, said plans and specifications being made a part of said agreement; that the plaintiff built said Acre schoolhouse so called, in accordance with said agreement; that the defendants are the owners and publishers of a daily newspaper in said Clinton, called the Clinton Daily Item; that the said Clinton Daily Item had, at the time hereinafter stated, a large cirulation and was widely and generally read in said Clinton and in the towns in the vicinity of said Clinton; that on March 22, 1911, the defendants, with intent to cause it to be believed that the plaintiff had cheated, defrauded, and violated his said agreement with the inhabitants of the town of Clinton, in the matter of the building of the said Acre schoolhouse, did cause to be published and did publish in said newspaper a false and malicious libel concerning the plaintiff in his calling and business, as follows:

"On Tuesday afternoon, Dr. Mackay and Atty. Duncan went to the building. John T. McMahon, who is a contractor, was

there and they went through the building and made investigations as to certain things that up to that time they were only cognizant of, by hearsay and, according to their questions put to the architect and the nature of his answers, they learned some things while in the building.

"When seen to-day, John T. McMahon, who was with the two members of the committee who went through the building on Tuesday, gave out the following statement: 'I have looked over the plans and specifications of the Acre schoolhouse at two different times and have been through the building on several occasions. I find that the building is generally below specifications and I believe from what I have observed that $1,000 may have been saved in this way.'

"In answer to some questions Mr. McMahan gave out the following: 'There are three floors in the building which according to the method he used for figuring the strength of floors are incapable of sustaining more than their own weight, with a good margin of safety and that they are not fit floors to have children on at the present time. The specifications of the floors was first-class maple $2\frac{1}{2}$ inches wide; and third-class maple, mixed with birch was used.

"'The outside finish called for first grade cypress in the plans and poor pine was used, which is a saving of 300 per cent. in this material, the cost of cypress being about $80 per 1,000 feet, while pine can be bought for $25 per 1,000 feet.

"'The foundations of the building called for a coating of cement and tar to keep out the moisture and no cement was used on the foundations, the only material there being a coating of tar.'

"Among other things that Mr. McMahon said he found wrong with the building was that an inferior grade of slate was used, which information he says he received from a slater; that an inferior grade of glass was used in the windows. In the construction of the roof where copper should have been used paper was put in its place and in other places zinc was used instead of copper. Some steps in the rear of the building, which should have been stone according to the specifications, are of wood.

"It has been stated that the sewer connections have been paid for by the town when they were called for originally to be paid for by the contractor. When asked with regard to that

statement Mr. McMahon said he saw the plans and he believed that the sewer connections should have been paid for by the contractor."

And the plaintiff further says that the defendants then and there, and by the words then and there published, as above alleged, publicly, falsely and maliciously accused the plaintiff of dishonesty, fraud, cheating and lack of good faith in his calling and business. That thereby the plaintiff was greatly injured in his good name and credit in his said calling and business, to his great damage, and has suffered great loss of income and profits by the loss of work, jobs and contracts, and by the loss of opportunities to bid for work, jobs and contracts; all to his great damage as claimed in his writ.

The defendants demurred to the declaration assigning as causes of demurrer the following:

1. That said declaration does not state a legal cause of action substantially in accordance with R. L. c. 173.

2. That it does not appear that the article relied on as libellous referred to the plaintiff or applied to him in a defamatory sense.

3. That said declaration does not contain a direct averment that the defendants charge the plaintiff with any crime or wrongdoing.

4. That the alleged libellous words do not by their natural import nor in connection with any facts or explanations stated in said declaration in any manner charge or impute any crime or wrongdoing to the plaintiff and are not in themselves actionable.

5. That said declaration does not contain a direct averment that the article relied on as libellous was published of and concerning the plaintiff in his trade and occupation.

6. That the language used does not import any personal reflection or attack upon the character of the plaintiff, either as an individual or in his business as a contractor and builder, but is merely a disparagement of the work done by him and therefore is not libellous.

7. That the article relied on in the plaintiff's declaration as libellous is not libellous.

The case was heard on the demurrer by *Ratigan*, J., who sus-

tained the demurrer and ordered judgment for the defendants. From the judgment entered in accordance with this order the plaintiff appealed.

The case was submitted on briefs.

*G. E. O'Toole & J. H. O'Brien,* for the plaintiff.

*D. I. Walsh, T. L. Walsh & J. H. Walsh, Jr.,* for the defendants.

DE COURCY, J. A defamatory written statement which imputes to a contractor dishonesty or fraud in his business will in itself support an action for libel. Newell, Slander & Libel, (2d ed.) 195. *Lovejoy* v. *Whitcomb,* 174 Mass. 586. If the language of the newspaper article in question, taking the words in their natural sense, fairly may bear the meaning that the plaintiff dishonestly failed to comply with his contract to erect a school building, the demurrer must be overruled. "It is only when the court can say that the publication is not reasonably capable of any defamatory meaning, and cannot reasonably be understood in any defamatory sense, that the court can rule, as matter of law, that the publication is not libellous." Field, J., in *Twombly* v. *Monroe,* 136 Mass. 464, 469.

Under the law of libel and slander it is true that mere disparagement of another's goods or work is not actionable without averment and proof of special damage. *Boynton* v. *Shaw Stocking Co.* 146 Mass. 219. Here, however, the language, taken in its natural and ordinary meaning, is capable of being understood by the average man as a personal reflection on the plaintiff's character and not merely as a criticism of his work. Considered with reference to the subject to which they relate and the circumstances under which they were written, the words may be found to impute a lack of good faith on the part of the plaintiff in carrying out his building contract, and a dishonest substitution of inferior materials for those called for in the specifications, whereby the plaintiff defrauded the town to the amount of $1,000. Moreover, as the law of libel is of wider extent than that of slander, the printed language in question well may be considered libellous on the further ground that it is calculated to bring the plaintiff into disgrace by discrediting his good name. The question of libel or no libel was for the jury. *Lovejoy* v. *Whitcomb,* 174 Mass. 586. *Haynes* v. *Clinton Printing Co.* 169 Mass. 512.

Whether the article was published concerning the plaintiff is a question of fact. It easily could be learned by those of the public who wished to discover it, aided by the facts and circumstances attending the publication, that the plaintiff was the contractor referred to. *Hanson* v. *Globe Newspaper Co.* 159 Mass. 293.

The demurrer does not raise the question whether there was a sufficient allegation that the plaintiff suffered special damage. *Morasse* v. *Brochu,* 151 Mass. 567. The issue of the truth of the statements, and the claim of qualified privilege based on the argument that the publication was a fair and reasonable comment and criticism on a matter of public interest cannot be availed of on the demurrer as they are matters of defense. And it is to be noted that the declaration avers that the words were published maliciously, proof of which would destroy the alleged *prima facie* privilege. *Commonwealth* v. *Pratt,* 208 Mass. 553. *Brown* v. *Harrington,* 208 Mass. 600. *Burt* v. *Advertiser Newspaper Co.* 154 Mass. 238.

*Judgment reversed; demurrer overruled.*