Bert LAHR, Plaintiff, Appellant,

v.

ADELL CHEMICAL CO., Inc., et al.,
Defendants, Appellees.

No. 5883.

United States Court of Appeals
First Circuit.

Heard Nov. 9, 1961.

Decided March 12, 1962.

George Waldstein, Boston, Mass., with whom Harold Katz, Boston, Mass., was on brief, for appellant.

Jerome P. Facher, Boston, Mass., with whom Hale & Dorr, Boston, Mass., was on brief, for appellees.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

This is an appeal from the dismissal of a complaint for failure to state a cause of action. The plaintiff contends that he has alleged three causes—for unfair competition, for invasion of privacy and for defamation. According to the complaint the plaintiff is a professional entertainer who has achieved stardom—with commensurate financial success—on the legitimate stage, in motion pictures, on radio, television and other entertainment media throughout the United States, Canada and elsewhere. This he has done in substantial measure because his "style of vocal comic delivery which, by reason of its distinctive and original combination of pitch, inflection, accent and comic sounds," has caused him to become "widely known and readily recognized * * * as a unique and extraordinary comic character." The complaint alleges that the defendant Adell Chemical Company, in advertising its product "Lestoil" on television, used as a commercial a cartoon film of a duck and, without the plaintiff's consent, "as the voice of the aforesaid duck, an actor who specialized in imitating the vocal sounds of the plaintiff." It is further alleged that the "vast public television audience and the entertainment industry" throughout the United States, Canada and elsewhere believed that the words spoken and the comic sounds made by the cartoon duck were supplied and made by the plaintiff. It is alleged that this was a misappropriation of the plaintiff's "creative talent, voice, vocal sounds and vocal comic delivery" and a "trading

upon his fame and renown." In addition, it injured plaintiff's reputation in the entertainment field, both because it cheapened plaintiff to indicate that he was reduced to giving anonymous television commercials and because the imitation, although recognizable, was inferior in quality and suggested that his abilities had deteriorated.

■ Although plaintiff asserts the "voice of the aforesaid duck," alias perhaps mockingbird, was heard throughout the land, with possibly varying legal consequences, the law he cites is on no such scale. Upon our pressing, he agreed that we need consider no law except that of Massachusetts and New York. We will interpret this concession as meaning not that plaintiff does not claim injury in other states, but that for present purposes we may assume the law of those states to be in accord with one or both of the two jurisdictions specified.[1]

■ We deal first with the right of privacy. The Massachusetts court has avoided recognizing such a right. Kelley v. Post Publishing Co., 1951, 327 Mass. 275, 98 N.E.2d 286; Themo v. New England Newspaper Pub. Co., 1940, 306 Mass. 54, 27 N.E.2d 753. Plaintiff alleges nothing on this score which tempts us to depart from that practice. To the extent that the complaint states anything of substantial moment, it should fall within the claims for unfair competition and defamation. We see no profit in exploring this alternative and, if anything, thornier path. Cf. Prosser, Privacy, 48 Cal.L.Rev. 383, 401 (1960).

■ Any rights resulting from the special New York statute, sometimes called the right of privacy statute, flow from the use, for commercial purposes, of a party's "name, portrait or picture." New York Civil Rights Law, McKinney's Consol.Laws, c. 6 §§ 50 and 51. Plaintiff's claim here, at best, is that though the picture was that of a duck, the voice was the "name," which he enlarges to "identity," of the plaintiff. The statute is very specific. If the legislature intended that whenever an anonymous speaker extolled a commercial product a cause of action arose (and criminal penalties could be imposed) if anyone could claim the voice was mistaken as his, it should have used a phrase of more general import. In the absence of any New York authority, "name" can be given no such catholic connotation.[2]

■ With respect to the claim for defamation, we are not faced with the problem of whether defendant's conduct in broadcasting a tape-recording is to be considered libel or slander. Since the injury alleged was to plaintiff's professional reputation, it makes no difference. Lynch v. Lyons, 1939, 303 Mass. 116, 20 N.E.2d 953; Lovejoy v. Whitcomb, 1899, 174 Mass. 586, 55 N.E. 322; Nichols v. Item Publishers, Inc., 1956, 309 N.Y. 596, 132 N.E.2d 860; Rager v. McCloskey, 1953, 305 N.Y. 75, 111 N.E.2d 214. A charge that an entertainer has stooped to perform below his class may be found to damage his reputation. Louka v. Park Entertainments, Inc., 1936, 294 Mass. 268, 1 N.E.2d 41; Sim v. H. J. Heinz Co., Ltd., (C.A.) [1959] 1 W.L.R. 313, semble.[3] Plaintiff's allegations in this respect are not insufficient. Whether audible identification was enough in a

1. We will not, on the other hand, adopt defendant's singular theory that Massachusets, as the court of the forum, would not look beyond its own law with respect to unfair competition (which defendant construes with great strictness in its favor) and, on the other hand, would look only to the law of New York, as the state of plaintiff's domicile, for defamation.

2. Plaintiff quotes the phrase "word painting" from Levey v. Warner Bros. Pictures, Inc., D.C.S.D.N.Y., 1944, 57 F.Supp. 40, 42. We think the quotation fails to take into account the next sentence. In any event, it is dictum not followed in any state decision.

3. Sim was an application for a preliminary injunction. The facts were remarkably like those at bar. In refusing the interlocutory order the court did not suggest that plaintiff had not stated a valid cause of action. For an able discussion of that case, see Mathieson, Comment, 1961, 39 Can.B.Rev. 409.

field where imitation is easy, and perhaps properly suspect, is a matter we do not wish to decide upon the bare allegations of a complaint. But it has never been held in defamation that a plaintiff must be identified by name. Louka v. Park Entertainments, Inc., supra; Robinson v. Coulter, 1913, 215 Mass. 566, 102 N.E. 938; Kern v. News Syndicate Co., 1958, 6 A.D.2d 404, 178 N.Y.S.2d 274.

■ Plaintiff's additional assertion that an inferior imitation damaged his reputation raises a more doubtful question. Even entertainers who make no claim to uniqueness have distinctive vocal characteristics and may be thought to be recognized. If every time one can allege, "Your (anonymous) commercial sounded like me, but not so good," and contend the public believed, in spite of the variance, that it was he, and at the same time believed, because of the variance, that his abilities had declined, the consequences would be too great to contemplate. Occasional disparagement of public entertainers is the commonly accepted lot. Furthermore, there is no absolute test of excellence in dramatic performance. If what was attributed to the plaintiff was so manifestly inferior as to constitute actionable defamation, see, e. g., Ben-Oliel v. Press Pub. Co., 1929, 251 N.Y. 250, 167 N.E. 432, we hold he must be able to point to some identification with himself more specific than the remaining similarities. We know of no case which gives a plaintiff such liberty to put a cap on and at the same time say it does not fit.[4]

■ In the light of the foregoing it is not strictly necessary to consider on what further grounds the complaint can be supported, but since the question of unfair competition must inevitably arise we will discuss it briefly. The defendant obscures the issue by arguing at length that imitation is not unfair competition. This may indeed be true, if there is no confusion of source. Cf. Chappell & Co. v.

Fields, 2 Cir., 1914, 210 F. 864; Cheney Bros. v. Doris Silk Corp., 2 Cir., 1929, 35 F.2d 279, cert. den. 281 U.S. 728, 50 S.Ct. 245, 74 L.Ed. 1145. But plaintiff here is not complaining of imitation in the sense of simply copying his material or his ideas, but of causing a mistake in identity. Such passing off is the basic offense. True, it was not defendant's product that was offered in competition, but that of the anonymous imposter whom defendant, for its benefit, subsidized. This is a distinction without a difference. Plaintiff's complaint is that defendant is "stealing his thunder" in the direct sense; that defendant's commercial had greater value because its audience believed it was listening to him. In the light of plaintiff's allegations we could not say there was no such enhancement.

Furthermore, we can hardly agree with defendant that "there is no competitive interest or purpose served * * * and no real confusion of product which would lead to the appellant's loss of opportunity in the entertainment field." It could well be found that defendant's conduct saturated plaintiff's audience to the point of curtailing his market. No performer has an unlimited demand. We may agree with defendant that plaintiff has not shown any "property" interest entitled to copyright protection. And we might hesitate to say that an ordinary singer whose voice, deliberately or otherwise, sounded sufficiently like another to cause confusion was not free to do so. Plaintiff here alleges a peculiar style and type of performance, unique in a far broader sense. Before going further into this matter, and the possible relevancy and scope of secondary meanings, we think plaintiff's adjectival allegations should be tested in the crucible. Cf. Chaplin v. Amador, 1928, 93 Cal.App. 358, 269 P. 544.

■ ■ So far we have been talking about the defendant Adell Chemical Co.

---

4. We do not accept the dictum favorable to the plaintiff on this point in Gardella v. Log Cabin Products Co., 2 Cir., 1937, 89 F.2d 891, 896. While there may theoretically be a twilight zone where identification and defamation overlap, we think our present decision goes far enough.

**260**

(and, in effect, another corporation similarly charged). Plaintiff also claims that defendant Barowsky, a principal stockholder and an officer of Adell, was personally liable. The complaint alleges that the tortious acts were committed by the corporate defendant, its "officers, servants, agents, affiliates and employees." We agree with Barowsky that simply identifying him as "an officer" does not adequately allege his personal involvement. But a corporate officer is liable for torts in which he personally participated, whether or not he was acting within the scope of his authority. Marks v. Polaroid Corp., 1 Cir., 1956, 237 F.2d 428; National Cash-Register Co. v. Leland, 1 Cir., 1899, 94 F. 502. After remand the district court may, in its discretion, consider a motion to amend the complaint to make the allegations more specific as to Barowsky in this respect if the plaintiff so wishes. However, we cannot agree with the plaintiff that since Adell is dissolved, and Barowsky is an alleged recipient of its assets in distribution, his secondary liability, if any, as a distributee, Burke v. Marlboro Awning Co., 1953, 330 Mass. 294, 113 N.E.2d 222, can be enforced in a primary action. Mass.G.L. c. 156, § 38; see Priest v. Essex Hat Mfg. Co., 1874, 115 Mass. 380; Cambridge Water Works v. Somerville Dyeing & Bleaching Co., 1862, 4 Allen 239, 86 Mass. 239. See also 13A Fletcher Cyclopedia Corporations ch. 58, §§ 6320, 6322 (1961 revision).

■■■■ A word about the statute of limitations. The complaint alleges that the offending activities occurred "since the beginning of December 1958." In Massachusetts the ordinary tort period of limitations is two years; for libel it is one year. Mass.G.L. c. 260, §§ 2A, 4. The action was not commenced until January 1961. It does not appear for how long a period the duck trespassed on plaintiff's reputation. Defendant, relying on the single publication rule, asserts that plaintiff's rights became barred by December 1960. This rule is normally applicable to continued sales and new editions of a single literary work. See,

e. g., Dale System, Inc. v. Time, Inc., D.C. Conn., 1953, 116 F.Supp. 527; Uniform Single Publication Act (1952). Cf. Riley v. Dun & Bradstreet, 6 Cir., 1959, 172 F.2d 303. The statute of limitations is an affirmative defense. Whether the single publication rule should be applied to the circumstances of this case had best be decided when we know what they were. A fortiori, we will decide nothing about laches in respect to unfair competition. Cf. Seaboard Finance Co. v. Martin, 5 Cir., 1957, 244 F.2d 329.

Judgment will be entered vacating the judgment of the District Court and remanding the case to that court for further proceedings not inconsistent herewith.