Nancy SINATRA, Plaintiff-Appellant,

v.

The GOODYEAR TIRE & RUBBER CO.,
an Ohio corporation, Young & Rubicam,
Inc., a New York corporation, Defend-
ants-Appellees.

No. 23472.

United States Court of Appeals,
Ninth Circuit.

Nov. 20, 1970.

Newton Kalman (argued), James A. Cohen, of Caidin, Bloomgarden & Kalman, Beverly Hills, Cal., for plaintiff-appellant.

Anthony Liebig (argued), Michael E. Meyer, of Lillick, McHose, Wheat, Adams & Charles, Los Angeles, Cal., for defendants-appellees.

Before DUNIWAY, KILKENNY and TRASK, Circuit Judges.

TRASK, Circuit Judge:

This is an appeal brought by Nancy Sinatra from a summary judgment entered against her in favor of appellees, on her complaint against Goodyear Tire and Rubber Company based upon unfair competition, on the ground that there was no genuine issue as to a material fact. The district court's jurisdiction was founded on diversity of citizenship. 28 U.S.C. § 1332. This court has jurisdiction under 28 U.S.C. § 1291.

Plaintiff-appellant is a professional entertainer. She had made a recording of a song entitled "These Boots Are Made For Walkin'" which had become popular. The music, lyrics and arrangement of this composition had been copyrighted with Criterion Music as the copyright proprietor.

The defendants Goodyear Tire and Rubber Company, a corporation, and Young and Rubicam, Inc., an advertising agency, conceived the idea of coining the phrase "wide boots" as a descriptive term for tires manufactured by defendant Goodyear. As part of a widespread advertising campaign based upon this "wide boots" theme, the defendants produced and exhibited six radio and television commercials centered around a musical background using the music and revised lyrics from "These Boots Are Made For Walkin'" in combination with the voice of a female singer who was not shown on the screen or identified by name. In the four television commercials, two had a group of female voices singing the song and two had a single female voice. All four had a male voice narrating the commercial with four girls dressed in high boots and "mod" clothes appearing briefly with rolling tires. Each of the two radio commercials had a single female voice singing the song and a male narrator giving the commercial.[1]

The complaint alleges that the song has been so popularized by the plaintiff that her name is identified with it; that she is best known by her connection with the song; that said song and the arrangement used by defendants "has acquired a secondary meaning"; that the defendants selected a singer whose voice and style was deliberately intended to imitate the voice and style of the plaintiff; and that the physical appearance and dress of the girls who appeared in fleeting views on the television commercials utilized the mannerisms and dress of the plaintiff. All of this, the complaint alleges, was intentionally accomplished for the purpose of deceiving the public into believing that the plaintiff was a participant in the commercials.

---

1. The court heard and viewed the commercials, all of which were filed as exhibits.

Plaintiff Sinatra further alleged that the defendant Young and Rubicam had previously contacted her agent in an effort to employ her on behalf of Goodyear but no contract was concluded.

She thereupon prayed for general and punitive damages, an accounting of all sales of Goodyear tires during the period the commercials were used and a reasonable royalty therefrom, together with a permanent injunction restraining defendants from further use of all of the commercials.

The defendants filed a motion to dismiss and a motion for summary judgment supported by affidavit and exhibits consisting of the film and tapes in question. The plaintiff filed her counteraffidavit and that of her agent.

Upon these papers the district court found that:

"The performances of 'These Boots Are Made For Walkin'' on each of said two radio commercials and four television commercials are anonymous; that is, there is no audio or visual representation, holding out, or inference that any of the commercials embody the performance or voice of any particular individual or individuals."

The Court thus concluded in part:

"Defendants did not pass-off; that is, they did not mislead the public into thinking their commercials were the product of plaintiff or anyone else. "Imitation alone does not give rise to a cause of action; there is, therefore, no genuine issue of fact and defendants are entitled to Summary Judgment."

On appeal, Sinatra asserts that her complaint alleged the essential elements of the tort of passing-off and raised genuine issues as to material facts so that the district court erred in granting summary judgment. We disagree and affirm.

At the outset it must be remembered that this is not a copyright infringement case.[2] The copyright proprietor was Criterion Music. Criterion owned the copyright on the music, the lyrics and the arrangements of "These Boots Are Made For Walkin'." On March 3, 1967, and before the production of the commercials complained about, Criterion entered into a written agreement with Young and Rubicam on behalf of the defendant Goodyear for a license to use the composition, "including any arrangements thereof owned or controlled by you, music and/or lyrics. * * *" Complete rights were given for television and radio and for commercial use for advertising purposes on behalf of Goodyear. The written agreement with all of its provisions, warranties and representations was accepted and approved by Lee Hazelwood, designated as the author.

Neither is it a case where an actual tape or other recording of the voice of the plaintiff has been replayed.[3] It is not falsely stated to be a Nancy Sinatra rendition. The defendant candidly admitted for purposes of the motion for summary judgment and the district court assumed that the vocal rendition was an imitation of plaintiff's recorded performance of this particular song.

The power to provide copyright protection for a limited time to the "Writings and Discoveries" of authors and inventors is one of the enumerated powers of Congress.[4] The items designated by Congress to be within the constitutional protection of "writings" were broadened to include a musical composition in

---

2. The complaint did not allege copyright infringement. Defendants acquired a license to use the copyrighted music, lyrics and arrangement of "These Boots Are Made For Walkin'" from Criterion Music, the copyright proprietor, on March 3, 1967. Rather, plaintiff alleges the intentional "passing-off" of the voice and mannerisms of others as her own for commercial exploitation.

3. Metropolitan Opera Ass'n. v. Wagner-Nichols Recorder Corp., 199 Misc. 786, 101 N.Y.S.2d 483 (1950), affirmed 279 App.Div. 632, 107 N.Y.S.2d 795 (1951).

4. U.S.Const. art. I, § 8, cl. 8.

1831,[5] and the author was given the exclusive right "to arrange or adapt it * * *."[6] When the Copyright Act was amended in 1909 it provided that any person complying with the provisions of the Act (i.e., obtaining a copyright) should have the exclusive right:

"[t]o perform the copyrighted work publicly for profit if it be a musical composition; and * * * to make any arrangement or setting of it or of the melody of it in any system of notation or any form of record in which the thought of an author may be recorded and from which it may be read or reproduced."[7]

Thus the author or composer was accorded copy protection, but no provision has yet been made in the Act for a performer's right, per se.[8]

The appellant recognizes all of this and submits to this court the question as to whether or not she is entitled to relief from the alleged unfair competition by appellees.

Since this is a diversity action and reliance may not be based on the Federal Copyright Act, the law to be applied is the law of the state. The complaint indicates that the plaintiff is a resident of the State of California, the forum state. The defendants are both doing business in the State of California although one is alleged to be incorporated in Ohio and the other in New York. The wrong, if it occurred, is alleged to have occurred in many states since the advertising campaign was nationwide. None of the parties has urged that the law of any state other than that of the forum be applied. In the absence of any other showing we apply the law of the State of California. *Cf.* Bowser, Inc. v. Filters, Inc., 398 F.2d 7 (9th Cir.1968).

Under the laws of California unfair competition is defined by code.[9] As thus defined, unfair competition shall mean and include "unlawful, unfair or fraudulent business practice and unfair, untrue or misleading advertising * * *."

An examination of the cases decided under the statute immediately disclosed an obvious distinction on the facts between this case and the great mass of unfair competition cases. There is no competition between Nancy Sinatra and Goodyear Tire Company. Appellant is not in the tire business and Goodyear is not selling phonograph records. There is no passing-off by the defendant of the plaintiff's products as its own either by simulation of name, slogan, device or other unfair trade practice.[10]

No real assistance is therefore obtained from the California statute or cases decided under it. Neither counsel has relied upon the statute or the ordinary cases construing it. We turn then to an examination of the general authorities cited by Sinatra to determine if a cause of action exists.

Dean Prosser defines the tort of "passing-off" as involving the basic idea of competing for custom in the trade. Thus it is:

"The making of some false representation to the public or to third persons, likely to induce them to believe that the goods or services of another are those of the plaintiff. * * * The test laid down in such cases has been whether the resemblance is so great as to deceive the ordinary cus-

---

5. Act of February 3, 1831, ch. 16, 4 Stat. 436. See 17 U.S.C. § 5(e).

6. 17 U.S.C. § 1(b).

7. 17 U.S.C. § 1(e). *Cf.* Capitol Records v. Mercury Records Corp., 221 F.2d 657 (2d Cir. 1955).

8. Kaplan, Performers Right and Copyright: The Capitol Records Case, 69 Harv.L. Rev. 409, 411 (1956). *See generally*, Netterville, Copyright And Tort Aspects of Parody, Mimicry And Humorous Commentary, 35 So.Cal.L.Rev. 247 (1962).

9. Cal.Civ.Code, § 3369 (West 1970).

10. MacSweeney Enterprises, Inc. v. Tarantino, 235 Cal.App.2d 549, 45 Cal.Rptr. 546 (1965); Metro-Goldwyn-Mayer, Inc. v. Lee, 212 Cal.App.2d 23, 27 Cal.Rptr. 833 (1963); Chaplin v. Amador, 93 Cal. App. 358, 269 P. 544 (1928).

tomer acting with the caution usually exercised in such transactions, so that he may mistake one for the other." Prosser, Law of Torts 982–83 (1964).

Here we have a claim of an incidental or secondary passing-off. Appellant seeks to bring her case within the orbit of the traditional pattern of unfair competition by asserting that because some people would read her voice into the commercial the defendant has increased its sale of tires "by many millions of dollars."

Counsel has called attention to, and we have discovered, four cases which directly bear on appellant's claim. They are: Davis v. Trans World Airlines, 297 F. Supp. 1145 (C.D.Cal.1969); Lahr v. Adell Chemical Co., 300 F.2d 256 (1st Cir.1962); Sim v. H. J. Heinz Co., Ltd., [1958] 1 W.L.R. 313 (C.A.1959); and Gardella v. Log Cabin Products, Inc., 89 F.2d 891 (2d Cir.1937).

*Gardella* was the Aunt Jemima case. In it the defendants used a singer and an actor in an advertising campaign for Aunt Jemima Pancake Flour and Log Cabin Syrup over a radio station. They were presented under the name of "Aunt Jemima", a name which, with a picture of the character, had been registered as a trademark since 1890. The plaintiff was a stage and radio performer who had used the name in many performances and in recordings. Although plaintiff obtained a recovery in damages in the district court, it was reversed because it was improperly based in part upon a claim under the state's Civil Rights law. The claim based upon unfair competition was sent back to be established, if at all, upon standards set out in the court's opinion. The court pointed out that although the name "Aunt Jemima" was used by both performers, the use of the name for the fictitious character was protected by the trademark registration and the only duty of the defendants was one of identification to prevent confusion with the theatrical Aunt Jemima who was the plaintiff and who had an established reputation and earning power as a per-

former. Absent confusion or deception, the court stated, imitation alone was not sufficient to sustain the claim. The court further suggested that so long as the pancake Aunt Jemima advertised her own products, imitation would not be deception. 89 F.2d at 897.

In *Sim, supra,* the Heinz Company developed an advertising program using speech from a cartoon figure. Alastair Sim, a well known actor, alleged that the advertiser employed another actor, Ron Moody, to make the vocal comments. Moody had in the past simulated the voice of Sim and the complaint was that he did so on these television commercials. The application for an injunction was denied on appeal. Lord Justice Hodson expressing some doubt said:

"I would only add this. This is, on any view of the matter, a novel form of action of passing off. The plaintiff contends that his voice as an actor is part of his stock-in-trade and therefore is something which he is entitled to protect as part of his goods. No doubt that is an arguable case, but there are various questions to be determined in this action, which has not yet been tried, including the question whether this voice can in truth be regarded as a property and whether, in the circumstances of this case there could be said to be anything in the nature of unfair trade competition in a common field, where in the one case you have an actor who uses his voice in the performance of his particular occupation and, on the other hand, another actor who, in some way or other, uses his voice to imitate a voice on television for advertising purposes." 1 W.L.R. at 319.

Lahr v. Adell Chemical Co., *supra,* was also a television commercial in which a cartoon duck was used to speak with a voice alleged to be the simulated voice of Bert Lahr, a successful professional entertainer. The complaint alleged three causes of action, for unfair competition, for invasion of privacy, and for defamation. An order dismissing the complaint for failure to state a claim was reversed on the basis of the claim of unfair com-

petition. The court on appeal pointed out that the plaintiff had achieved stardom:

> "[I]n substantial measure because his 'style of vocal comic delivery which, by reason of its distinctive and original combination of pitch, inflection, accent and comic sounds,' has caused him to become 'widely known and readily recognized * * * as a unique and extraordinary comic character.'" 300 F.2d at 257.

The court held that the imposter was "stealing his thunder" and that on the face of the allegations the plaintiff was entitled to have his complaint go to trial. It was clear however that a cause of action for damage to reputation was not stated.

> "If every time one can allege, 'Your (anonymous) commercial sounded like me, but not so good,' and contend the public believed, in spite of the variance, * * * that his abilities had declined, the consequences would be too great to contemplate." 300 F.2d at 259.

It appears that *Lahr* was decided on the basis of a singular uniqueness of quality of voice that made his situation not just a difference of degree but a difference in kind.

> "We may agree with defendant that plaintiff has not shown any 'property' interest entitled to copyright protection. And we might hesitate to say that *an ordinary singer whose voice, deliberately or otherwise,* sounded sufficiently like another to cause confusion was not free to do so. Plaintiff here alleges a peculiar style and type

of performance, unique in a far broader sense." 300 F.2d at 259 (emphasis supplied).

Because appellant relied so heavily upon *Lahr,* we point to a factual distinction, shared with *Sim,* that will have greater significance when seen in the light of *Sears* and *Compco,* discussed *infra.* In *Lahr* and *Sim* the defendants were not dealing in materials in which the defendants had a copyright. Or, to elaborate, in *Lahr* and *Sim* the plaintiffs claimed a "secondary meaning" in pure sound, their individual vocal characteristics.[11] The protection sought was not for the combination of sound together with copyrighted lyrics, melody and arrangement, as here. In this case appellant's complaint is not that her sound is uniquely personal; it is that the sound in connection with the music, lyrics and arrangement, which made her the subject of popular identification, ought to be protected. But as to these latter copyrightable items she had no rights. Presumably, she was required to obtain permission of the copyright owner to sing "Boots", and to make an arrangement of the song to suit her own tastes and talents. Had she desired to exclude all others from use of the song so that her "secondary meaning" with the song could not be imitated she could have purchased those rights from the copyright proprietor. One wonders whether her voice, and theatrical style, would have been identifiable if another song had been presented, and not "her song", which unfortunately for her was owned by others and licensed to the defendants.[12] But that case is not before us now.

---

11. Gardella v. Log Cabin Products Inc., *supra,* is more difficult to distinguish upon the facts. The court there held that a "duty of identification" rested upon the defendant, the employer of the fictitious Aunt Jemima, and that the plaintiff, theatrical Aunt Jemima, must show actual confusion to establish a cause of action. *Gardella* was a pre-*Compco* case (see *infra*) and perhaps that is its only distinction.

12. The tapes and the movies introduced as exhibits were viewed and heard by this court. To the untrained ear the sound of the voice carried no recognition, and no confusion of source. It was of professional quality but there was no readily identifiable accent (Maurice Chevalier), range, quality, (Lahr or Andy Devine), or pitch which would distinguish it to the ordinary listener from many others or identify it with any particular person. Although the actresses who appeared fleet-

Davis v. Trans World Airlines, *supra,* involved a television commercial where the airline used the music, lyrics and arrangement of a popular song "Up, Up and Away" to which it had acquired the rights from the copyright proprietor. Plaintiffs, a nationally known singing group called "The Fifth Dimension," had made a well known recording of the same song. The singing in the commercial was anonymous, as here. The district court held on a motion for summary judgment that there had been no passing-off and that imitation alone did not give rise to a cause of action.[13] In any event, *Davis* does not aid Sinatra for the court there denied recovery upon similar facts and a similar, if not identical, legal theory to that urged by Sinatra.

Across all of these cases fall the shadows of Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed. 2d 661 (1964), and Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964). In those two cases the Court announced, or we should probably more properly say, reaffirmed the "strong federal policy favoring free competition in ideas which do not merit [or qualify] for patent protection."[14] Although both cases involved imitation of patented articles the language of the Court spoke in broader terms.

> "But because of the federal patent laws a State may not, when the article is unpatented and *uncopyrighted,* pro-

hibit the copying of the article itself or award damages for such copying." 376 U.S. at 232–233, 84 S.Ct. at 789. (emphasis supplied).

In both *Sears* and *Compco,* the unpatented articles of the plaintiff's were copied exactly by the defendants and sold as the defendant's articles without further identification.

> "What Sears did was to copy Stiffel's design and to sell lamps almost identical to those sold by Stiffel. This it had every right to do under the federal patent laws." 376 U.S. at 231, 84 S.Ct. at 789.

Nor do the copiers' motives make any difference. 376 U.S. at 238, 84 S.Ct. at 782.[15]

The Court made it very clear that just as a state could not encroach upon the federal patent laws directly it could not do so indirectly under the guise of enforcing its laws against unfair competition where those laws would clash with the federal objectives. Here, the defendants had paid a very substantial sum to the copyright proprietor to obtain the license for the use of the song and all of its arrangements. The plaintiff had not sought or obtained the same rights which would have protected the secondary meaning which she asserts. The resulting clash with federal law seems inevitable if damages or injunctive remedies are available under state laws.[16] Moreover, the inherent difficul-

---

ingly and did not sing, wore boots, such props for this particular song carried no more originality than a snow scene for a rendition of "White Christmas."

13. There was no appeal from the district court's decision. The question therefore remains an open one in this court.

14. See, Comments on *Sears* and *Compco* in Lear, Inc. v. Adkins, 395 U.S. 653, 656, 89 S.Ct. 1902, 1904, 23 L.Ed.2d 610 (1969).

15. We note the caveat of Mr. Justice Harlan, concurring in the result, 376 U.S. at 239, 84 S.Ct. 779, in the event predatory practices should exist. While there is an inference of predatory business prac-

tices in the early attempts to bargain with Miss Sinatra through her agent, the terms upon which the negotiations took place might raise a question as to who was the predator.

16. Gardella v. Log Cabin Products Co., *supra,* would appear to be governed by the same policy. That *Sears* and *Compco* are precedents for performers' rights, see Columbia Broadcasting System, Inc. v. De Costa, 377 F.2d 315 (1st Cir. 1967). The same court which permitted an unfair competition claim to go to trial in *Lahr, supra,* had no difficulty in the light of *Sears* and *Compco* in denying protection to Paladin and his "Have Gun, Will Trav-

ty of protecting or policing a "performance" or the creation of a performer in handling copyrighted material licensed to another imposes problems of supervision that are almost impossible for a court of equity.

An added clash with the copyright laws is the potential restriction which recognition of performers' "secondary meanings" places upon the potential market of the copyright proprietor. If a proposed licensee must pay each artist who has played or sung the composition and who might therefore claim unfair competition-performer's protection, the licensee may well be discouraged to the point of complete loss of interest. Finally as Judge Hand pointed out in his dissent in Capitol Records, Inc. v. Mercury Records Corp., 221 F.2d 657, 666–667 (2d Cir. 1955), to allow unfair competition protection where Congress has not given federal protection is in effect granting state copyright benefits without the federal limitations of time to permit definite public domain use.

The judgment of the district court is affirmed.

el" motif. *Id.* *See also,* Comment, The Twilight Zone: Meanderings In The Area of Performers' Rights, 9 U.C.L.A. L.Rev. 819, 840 (1962).