**Shirley BOOTH, Plaintiff,**

v.

**COLGATE–PALMOLIVE COMPANY and Ted Bates & Co., Inc., Defendants.**

**No. 71 Civ. 932.**

United States District Court,
S. D. New York.

Aug. 6, 1973.

Fitelson & Mayers, New York City, for plaintiff; Harold J. Sherman, Clifford Forster, New York City, of counsel.

Coudert Brothers, New York City, for defendants; Carleton G. Eldridge, Jr., John M. Keene, III, New York City, of counsel.

## OPINION

BONSAL, District Judge.

Plaintiff, Shirley Booth, instituted this action on March 2, 1971, against defendants Colgate-Palmolive Company ("Colgate") and Ted Bates & Co., Inc. ("Bates") to recover as compensatory and exemplary damages the sum of $4,000,000, which she claims she sustained by reason of the defendants' unfair competition and defamation. Her complaint alleges three causes of action: (1) under the New York State common law of unfair competition; (2) under the Lanham Trade-Mark Act (15 U.S.C. § 1125(a);[1] and (3) under the New York State law of defamation. Jurisdiction is asserted on the grounds of diversity of citizenship. 28 U.S.C. § 1332.

Defendants move for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure on the grounds that there is no genuine issue as to any material fact and that the defendants are entitled to judgment dismissing the complaint as a matter of law.

Plaintiff Shirley Booth is a well-known comedy and dramatic actress who has performed on the legitimate stage, in motion pictures, and on television. From 1961 to 1966, she played the title role of "Hazel" in a popular television comedy series broadcast weekly from 1961 to 1965 by the NBC television network and from 1965 to 1966 by the CBS television network. The series was based on the adventures of a copyrighted cartoon character named Hazel, with the permission of Ted Key, the character's creator and copyright holder, who was given credit during the broadcasts. Since 1967, television and audio tape recordings of the series have been presented throughout the United States and in other countries.

1. Plaintiff's complaint originally cited section 12 of the Lanham Act (15 U.S.C. § 52) as the statute upon which her second cause of action was based. In the briefs submitted on the present motion, plaintiff moved to amend the complaint to cite section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)). This motion is granted.

Defendant Bates is an advertising agency which produced radio and television commercials promoting Colgate's laundry detergent "Burst". These commercials, first broadcast on January 16, 1971, used the name and likeness of the copyrighted cartoon character Hazel pursuant to a written license agreement with Key, the creator and copyright holder, dated June 22, 1970. The voice of Hazel in the commercials was performed by Ruth Holden. Neither she nor the plaintiff was named or identified during the commercials.

The parties agree that New York law applies to plaintiff's first and third causes of action.

## I

### FIRST CAUSE OF ACTION: *Unfair Competition under New York Law*

Plaintiff relies on three arguments to support her first cause of action under the New York State common law of unfair competition. Plaintiff's first argument is that star performers such as herself have a property right in their performances, which property right permits the protection of those performances against both direct misappropriation, such as for example the unauthorized tape recording of a vocal performance, as well as against indirect misappropriation, such as the imitation of a performer's timing, inflection, tone, or general performing style. Plaintiff, Shirley Booth, has devoted many years to training as an actress and has attained stardom. She contends that she endowed the role of Hazel with her own unique and creative artistic interpretation, and that the "modern liberalized and considerably expanded doctrines of the New York law of unfair competition" protect her against imitation of her voice in defendants' commercials.

For the purposes of their motion, defendants concede that "Ruth Holden's voice as used in the Burst commercials constituted an 'imitation' of the 'normal speaking voice' . . . of Shirley Booth as plaintiff used it and it was heard in the 'Hazel' situation comedy series." Defendants contend, however, that imitation of a voice without more does not give rise to a cause of action for unfair competition.

Plaintiff relies on Metropolitan Opera Association, Inc. v. Wagner-Nichols Recorder Corp., 199 Misc. 786, 101 N.Y.S. 2d 483 (Sup.Ct.1950), aff'd, 279 App. Div. 632, 107 N.Y.S.2d 795 (1st Dept. 1951), as indicating the liberalized doctrines of unfair competition in New York. In that case, the court recognized the right to the exclusive use of one's own name and reputation. The court went on to say that the law also protects "the creative element in intellectual productions—that is, the form or sequence of expression, the new combination of colors, sounds or words presented by the production." 101 N.Y.S.2d at 494. Plaintiff also cites Lennon v. Pulsebeat News, Inc., 143 U.S.P.Q. 309 (Sup.Ct.N. Y.1964); Columbia Broadcasting System, Inc. v. Documentaries Unlimited, Inc., 42 Misc.2d 723, 248 N.Y.S.2d 809 (Sup.Ct.1964); and Dior v. Milton, 9 Misc.2d 425, 155 N.Y.S.2d 443 (Sup.Ct.), aff'd, 2 A.D.2d 878, 156 N.Y.S.2d 996 (1st Dept. 1956).

These cases, however, are not controlling here. *Metropolitan Opera, Columbia Broadcasting,* and *Lennon* involved direct misappropriation, not imitation. In *Metropolitan Opera*, for instance, the plaintiff was an opera company which had sold to a recording company the exclusive right to make and sell phonograph records of its operatic performances. The plaintiff had also sold to a radio broadcasting company the exclusive right to broadcast its opera performances. The defendants recorded these broadcasts and used their master recordings to make phonograph records of plaintiff's performances, which defendants then sold to the public.

The court granted the injunction sought by plaintiff and denied the defendants' motion to dismiss the complaint on the basis that the rights plaintiff had granted to the broadcasting company and to the recording company

were contractual, exclusive rights and that defendants' conduct constituted a direct misappropriation of plaintiff's property rights. Similarly, in *Dior*, which involved the copying of plaintiff's fashion designs, the court emphasized the fact that the defendants had been permitted to see the designs on the express condition that they would not make or divulge any reproduction of any of the designs. Here, in contrast, there was neither use of an actual recording of plaintiff's voice in defendants' commercials nor any express condition to viewers of the Hazel television series analogous to that set forth in *Dior*.

Moreover, the argument that New York law protects a performer from imitators is undercut by the Supreme Court decisions in Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964), and Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964). *Sears* and *Compco,* both involving invalid design patents, held that the states are preempted from protecting, under state unfair competition law, designs that Congress has not chosen to protect by means of the federal patent laws. The Court's reasoning, however, was not based upon peculiarities of patent law. Rather, the Court spoke in broad and general terms about the purpose of patent and copyright laws and about the need for national uniformity: "[B]ecause of the federal patent laws a State may not, when the article is unpatented and *uncopyrighted,* prohibit the copying of the article itself or award damages for such copying." 376 U.S. at 232–233, 84 S.Ct. at 789. (Emphasis added.) Again emphasizing the "strong federal policy favoring free competition in ideas which do not merit patent protection," the Court reaffirmed *Sears* and *Compco* in Lear, Inc. v. Adkins, 395 U.S. 653, 656, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969).

The latest Supreme Court decision, Goldstein v. California, 412 U.S. 546, 93 S.Ct. 2303, 37 L.Ed.2d 163 (1973) involved "record" or "tape piracy," mean-ing "the unauthorized duplication of recordings of performances by major musical artists." 93 S.Ct. at 2306. In *Goldstein,* the Court upheld a California statute which made it a criminal offense to "pirate" recordings produced by others. The Court, however, reaffirmed its decisions in *Sears* and *Compco,* which had dealt with copying or imitation, and pointed out that the California statute at issue placed no restraint on the "use of an idea or concept; rather, petitioners and other individuals remain free to record the same compositions in precisely the same manner and with the same personnel as appeared on the original recording." 93 S.Ct. at 2317.

The Court of Appeals for the Ninth Circuit had occasion, before *Goldstein,* to assess the effect of *Sears* and *Compco* on the common law of unfair competition in Sinatra v. Goodyear Tire and Rubber Co., 435 F.2d 711 (9th Cir.), cert. denied, 402 U.S. 906, 91 S.Ct. 1376, 28 L.Ed.2d 646 (1970). That case presented a factual situation similar to that presented here. The plaintiff in that case was a professional entertainer and had made a popular recording of a copyrighted song entitled "These Boots Are Made For Walking." Defendants were a tire manufacturer and an advertising company, which had conceived of an advertising compaign using as its theme the phrase "Wide Boots" as a descriptive term for defendant's tires. Radio and television commercials were made which featured a female singer, who was not identified in the commercials, singing "These Boots Are Made For Walking" under license from the copyright holder. Defendants admitted for purposes of the motion that the vocal rendition was an imitation of plaintiff's recorded performance of the song in question. The district court granted summary judgment for defendants, and the Court of Appeals, citing *Sears* and *Compco,* affirmed on the grounds that imitation alone does not give rise to a cause of action.

In Columbia Broadcasting System, Inc. v. DeCosta, 377 F.2d 315 (1st Cir.

1967), the Court of Appeals for the First Circuit refused to grant protection, in the absence of federal copyright protection, to the character "Paladin" and his "Have Gun, Will Travel" motif, which had been created by the plaintiff. Citing *Sears* and *Compco,* the Court of Appeals held that the federal policy of allowing free access to copy whatever the federal patent and copyright laws leave in the public domain prevailed over the plaintiff's interest in his creations.

Moreover, there are persuasive reasons of public policy for refusing to recognize a performer's right of protection against imitators. The policing of a performance or the creation of a performer in playing a role would present very difficult, if not impossible, problems of supervision for a court of equity. In addition, the recognition of a performer's right in a copyrighted work would impose undue restraints on the potential market of the copyright proprietor since a prospective licensee would have to gain permission from each of possibly many performers who might have rights in the underlying work before he could safely use it. Such a right could also conflict with the Constitutional policy of permitting exclusive use of patented and copyrighted works for only a limited period of time. Finally, the vesting of a monopoly in the performer and the prevention of others from imitating his postures, gestures, voices, sounds, or mannerisms may impede, rather than "promote the Progress of . . . useful Arts." U.S. Const., art. I, § 8. See *Sinatra, supra* at 717–718 of 435 F.2d; *DeCosta, supra* at 320 of 377 F.2d; Comment, The Twilight Zone: Meanderings in the Area of Performers' Rights, 9 U.C.L.A. L.Rev. 819 (1962).

■ For the foregoing reasons, the court finds that the imitation by defendants of plaintiff's voice without more, does not constitute unfair competition under New York law.

Plaintiff's second theory to support her claim of unfair competition is that the defendants infringed plaintiff's "rights of publicity" in her name, appearance, likeness, signature, or personality, for which she cites Haelan Laboratories, Inc. v. Topps Chewing Gum, Inc., 202 F.2d 866 (2d Cir.), cert. denied 346 U.S. 816, 74 S.Ct. 26, 98 L.Ed. 343 (1953). See also Cepeda v. Swift and Company, 415 F.2d 1205 (8th Cir. 1969); Ettore v. Philco Television Broadcasting Corp., 229 F.2d 481 (3d Cir. 1956); Negri v. Schering Corp., 333 F.Supp. 101 (S.D.N.Y.1971); Uhl- aender v. Henricksen, 316 F.Supp. 1277 (D.Minn.1970).

■ Under these cases, however, the plaintiff must show that her name or a likeness was used by defendants. Since the commercials in issue here are anonymous and do not use plaintiff's name or likeness in any way to identify her as the source of the voice of Hazel, this court finds that plaintiff cannot show an infringement of her rights to publicity.

Plaintiff's third theory to support her claim of unfair competition is based on her contention that the Hazel television series has been so closely connected with the voice she used in playing the part of Hazel that her voice has acquired a "secondary meaning." She contends that defendants, by "concealing the identity of the performer who imitated [her] voice," were attempting to deceive the public into thinking that the plaintiff endorsed Burst, in effect that defendants' acts constituted the tort of "free-ride" unfair competition under New York law. Plaintiff argues that defendants used two "clues" to plaintiff's identity in the commercials in order to bolster the association of Colgate's laundry detergent with Shirley Booth in the mind of the public: 1) the references of the anonymous performer in the commercials to herself as "Hazel," and 2) the word "Burst" itself as a "quickly recognizable symbol of the limitless 'bursts' of energy" with which Shirley Booth portrayed the television series character.

As authority for her argument, plaintiff cites Vaudable v. Montmartre, Inc., 20 Misc.2d 757, 193 N.Y.S.2d 332 (Sup. Ct.1959), where the court enjoined defendants from copying in their New York restaurant the name, coloring, lettering, and decor of plaintiff's well-known "Maxim's" restaurant in Paris. Plaintiff also cites Flexitized, Inc. v. National Flexitized Corp., 214 F.Supp. 664 (S.D.N.Y.1963), aff'd in part and rev'd in part, 335 F.2d 774 (2d Cir. 1964), in which the district court enjoined the defendants from using the word "Flexitized" in connection with the sales of their flexible garment stays, which products were sold in competition with those of the plaintiffs.

■ In *Flexitized,* the Court of Appeals held that the then recently-decided cases of *Sears* and *Compco* did not permit States, under the guise of regulating unfair competition, to grant what would be, in effect, patent protection. 335 F.2d at 781, n. 4. As the Supreme Court declared in *Sears,* the "mere inability of the public to tell two identical articles apart is not enough to support . . . an award of damages for copying that which the federal patent laws [or the federal copyright laws] permit to be copied." 376 U.S. at 232, 84 S.Ct. at 789. The Court of Appeals, however, in *Flexitized* distinguished *Sears* and *Compco* on the grounds that those cases permitted states to protect businesses in the use of their trademarks, labels, or distinctive dress in the packaging of goods so as to prevent others, by imitating such markings, from misleading purchasers as to the source of the goods. 335 F.2d at 781, n. 4.

■ In the present case, the plaintiff has not shown either that what she seeks to protect from imitation—her voice—functions as a trademark or trade name entitling it to protection, or that her voice was ever used in connection with any product or service in competition with a product or service of defendants. Moreover, in contrast to the cases cited by the plaintiff, in the present case defendants had a right to use the name and character of Hazel pursuant to the license agreement. And the name of its product, Burst, which name has been a registered trademark of Colgate's since 1956, cannot be said to identify or refer to the plaintiff. Accordingly, the strong federal policy emphasized in *Sears* and *Compco* permitting imitation prevails here over plaintiff's interest in protecting whatever secondary meaning may be attached to her voice as that of the television series' Hazel.

From the foregoing, it is evident that plaintiff's complaint does not state a cause of action for unfair competition under any of the three theories advanced.

## II

SECOND CAUSE OF ACTION: *Unfair Competition under the Lanham Act*

Section 43(a) of the Lanham Trade-Mark Act (15 U.S.C. § 1125(a)) provides that:

"Any person who shall . . . use in connection with any goods or services . . . a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce . . . shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation."

■ Plaintiff contends that defendants concealed from those who saw and heard defendants' commercials the origin of Hazel's voice, with the result that the public was deceived into thinking that the plaintiff endorsed Colgate's product Burst.

It is evident, however, that for the reasons set forth above, this alleged cause of action is also insufficient to en-

title the plaintiff to relief. There is no indication that plaintiff used her voice in connection with any "goods or services," nor that her voice alone can serve as a trademark or trade name, nor that plaintiff and defendants were in competition, nor even that the defendants used any description or made any representation to identify her, apart from the use of the Hazel cartoon character, for which they had permission from its copyright holder. See N. S. Meyer, Inc. v. Ira Green, Inc., 326 F.Supp. 338, 341–342 (S.D.N.Y.1971); Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Chandris America Lines, Inc., 321 F.Supp. 707 (S.D.N.Y.1971); Marshall v. Procter & Gamble Manufacturing Co., 170 F.Supp. 828 (D.Md. 1959).

### III

**THIRD CAUSE OF ACTION:** *Defamation under New York Law*

Plaintiff contends that the defendants' commercials constitute a libel per se inasmuch as they deceive the public into thinking that "of necessity, Shirley Booth has been reduced to using and selling her talents for anonymous radio and television commercials and advertising announcements, and that her talents have deteriorated and are less valuable."

Plaintiff cites Lahr v. Adell Chemical Co., 300 F.2d 256 (1st Cir. 1962), as indicating that the anonymous imitation of a professional entertainer's voice in a commercial may constitute defamation. In *Lahr*, the plaintiff, a professional entertainer with a unique style of vocal comic delivery, brought an action against a corporation which had used in its television commercials the anonymous services of another actor who specialized in imitating the vocal sounds of the plaintiff. The district court dis-

missed the complaint, but the Court of Appeals reversed, holding that "[a] charge that an entertainer has stooped to perform below his class may be found to damage his reputation." 300 F.2d at 258.

*Lahr*, however, cited Massachusetts law in support of its holding. Under New York law, plaintiff must show that the allegedly defamatory statement is both defamatory on its face and defamatory as to plaintiff. Without such a showing, the plaintiff must plead and prove special damages to recover. Hinsdale v. Orange County Publications, Inc., 17 N.Y.2d 284, 270 N.Y.S.2d 592, 217 N.E.2d 650 (1966). The commercials she contends are libelous do not refer to her nor mention her name. Even if it could be found that, due to a "secondary meaning," the public would associate her either with the cartoon character Hazel or merely with the name "Hazel," it cannot be said that performing the "voice over" in television and radio commercials would have a tendency directly to injure plaintiff in her business, profession, or trade. Cole Fischer Rogow, Inc. v. Carl Ally, Inc., 29 App.Div. 2d 423, 288 N.Y.S.2d 556 (1st Dept. 1968). There is no allegation that the voice was performed in an inferior manner in the commercials. A star performer's endorsement of a commercial product is a common occurrence and does not indicate either a diminution of professional reputation nor a loss of professional talent, though plaintiff herself might prefer to avoid such engagements. Accordingly, plaintiff's cause of action based on the theory that defendants' commercials constitute libel per se is not tenable.

For the foregoing reasons, defendants' motion for summary judgment dismissing the complaint is granted.

Settle judgment on notice.