**James MASDEA, Plaintiff,**

v.

**Donald T. SCHOLZ, Boston World Tours, Inc., Scholz Research & Development Group, Defendants.**

**Civ. A. No. 88–1662–C.**

United States District Court,
D. Massachusetts.

Aug. 13, 1990.

Mark A. White, Boston, Mass., for plaintiff.

Alan Rose, Nutter, McClennen & Fish, Boston, Mass., for Bradley Delp.

Donald S. Engel, Engel & Engel, Los Angeles, Cal., for Donald T. Scholz.

Kenneth A. Sweder, Howard M. Brown, Kaye, Fialkow, Richmond & Rothstein, Boston, Mass., for Francis Sheehan and John T. Hashien.

David M. Jones, McDermott & Rizzo, Boston, Mass., for all defendants.

## MEMORANDUM

CAFFREY, Senior District Judge.

This case is before the Court on the defendants' motion for summary judgment. In 1988, the plaintiff, James Masdea, brought this action in state court alleging that he has a contractual right to share the profits from certain albums and a concert tour performed by the rock group Boston. In his complaint, Masdea asserted six state law claims grounded variously in contract and tort. Masdea also asserted one federal law claim for violation of the Lanham Trade–Mark Act ("Lanham Act"), 15 U.S.C. § 1125(a). Based on the sole federal-law claim, the defendants removed this action to federal court pursuant to 28 U.S.C. § 1441, and the defendants now move for summary judgment on all the claims.[1] For the reasons stated below, summary judgment should be granted on the Lanham Act claim, and the remaining state law claims should be remanded to state court.

## I.

The only claim relevant to the disposition of this case is the alleged Lanham Act violation. Focusing on the Lanham Act claim, the undisputed facts are as follows.

The plaintiff, James Masdea, is rock drummer, and, in the early 1970s, Masdea played with a number of rock groups in the Boston area. During that time, Masdea met the defendant, Donald T. Scholz, and joined a rock band with Scholz called Mother's Milk. For several years, Masdea played with Mother's Milk and helped record certain songs written by Scholz. These tape recordings became known as the "Demo Tapes."

In 1976, a management firm called Ahearn and McKenzie heard the Demo Tapes and signed Scholz to a contract. In preparing to have Scholz audition for CBS Records, Inc. ("CBS"), Masdea was asked to leave Mother's Milk, and, although unwillingly, Masdea did so. Subsequently, Mother's Milk changed its name to Boston, signed a recording contract with CBS, and released an album.

The first Boston album was made up of songs from the Demo Tapes. On one song, entitled "Rock & Roll Band," Masdea was asked to and, in fact, did play the drums for Boston. On all the remaining songs, a new band member Sid Hashian played the drums. The album cover credited Masdea for his performance on "Rock & Roll Band," and credited Hashian for all the remaining drumming performances. After its release, the first Boston album sold more than 8,000,000 copies making it the most successful debut album in recording history.

In count five of the complaint, Masdea asserted that on the first Boston album "[d]efendants, Scholz, Boston, and Hashian, have used the Demo Tapes performed by the plaintiff and have represented them to be the drum tracks of Hashian." Further, Masdea claimed "Hashian copied, with the consent of Scholz and Boston and without the consent of [Masdea] the Demo Tapes performed by [Masdea]." Based on these allegations, Masdea charged that Scholz, Boston and Hashian "committed such false designation in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(c)."

In a deposition, Masdea supplied the following testimony concerning the performance of drum tracks on the first Boston album.

1. The complaint originally named the following defendants: the individual members of the rock group Boston (Donald T. Scholz, Bradley Delp, Francis Sheehan, John T. Hashian, Barry Goudreau), Boston World Tours, Scholz Research & Development, Jeffrey Dorenfeld, MCA Records, Inc. and CBS Records, Inc. CBS Records, MCA Records, and Dorenfeld were never properly served and are no longer parties in this case. Goudreau moved for summary judgment and, with the plaintiff's assent, was dismissed from this action. Further, the plaintiff agreed to dismiss Delp, Hashian, and Sheehan from the case. Consequently, the only remaining defendants are Scholz, Boston World Tours and Scholz Research & Development.

Q: Are you saying that "Boston" or Scholz or Hashian represented the demo tapes to be drum tracks of Hashian?
MASDEA: No.

\* \* \* \* \* \*

Q: So you're not saying that at any time there was a representation that the demo tapes themselves were the drum tracks of Hashian; is that right?
MASDEA: Correct.
Q: Are you saying that the demo tapes themselves, the drum tracks on the demo tapes, were incorporated in the first album?
MASDEA: No. No.
Q: What is it, then, that you are saying that Scholz and "Boston" represented were the drum tracks of Hashian?
MASDEA: Sibby just recopied the tracks that I had done on the demo tape. So he simply learned, like a cover band would learn a song of an artist, and replayed them on the record, slightly altered somewhat in his performance, but the majority of it was what I had already done.

Masdea Deposition, Vol. V, pp. 133–34. Masdea has made no further substantive allegations concerning the Lanham Act claim.

## II.

■ The defendants have moved for summary judgment in this case. A court should grant summary judgment if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). *See also Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 105 (1st Cir.1988). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment: the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in the original). An issue is genuine

if there is evidence sufficient for a reasonable jury to return a verdict for the opposing party. *Id.* at 248, 106 S.Ct. at 2510.

Once a party has made a properly supported summary judgment motion, the opposing party cannot rest on "mere allegations or denials of the adverse party's pleadings," but must "set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See Oliver*, 846 F.2d at 105.[2] "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(e). In light of these standards, we turn to an analysis of the Lanham Act claim.

## III.

■ Under the Lanham Act, common trade names may be protected from unfair infringement by competitors. The Lanham Act provides, in pertinent part:

Any person who shall ... use ... in connection with any goods or services ... a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods to enter into commerce ... shall be liable to a civil action ... by any person who believes that he is or is likely to be damaged by the use of any such false description or designation.

15 U.S.C. § 1125(a). Under this provision, a person may bring an action for the unauthorized or unsanctioned use of their trade name in interstate commerce which is likely to cause confusion or deception among purchasers regarding the origin of the goods or services. *See Pignons S.A. de Mechanique v. Polaroid Corp.*, 657 F.2d 482, 492–93 (1st Cir.1981); *Calamari Fisheries, Inc. v. Village Catch, Inc.*, 698 F.Supp. 994, 1005–06 (D.Mass.1988); *Railroad Salvage of Conn. v. Railroad Salvage, Inc.*, 561 F.Supp. 1014, 1019 (D.R.I.1983) (Selya, J.).

---

**2.** Under Local Rule 18, parties opposing summary judgment must also "include a concise statement of the material facts as to which it is

contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation."

The defendants assert that the undisputed facts in this case show no evidence of a false designation or description which violates the Lanham Act. The defendants point out that there was no misrepresentation on the album cover where Masdea and Hashian were accurately given credit for their performances. Further, the defendants argue that Masdea only alleges that Hashian imitated his drumming performance on the Demo Tapes, and such imitation of a performance does not violate section 1125(a) of the Lanham Act.

In response, Masdea has filed no opposition to summary judgment on the Lanham Act claim. At oral argument, Masdea's attorney stated that Lanham Act claim was asserted before initiating discovery, and, upon later review of the facts, Masdea now admits that there is no support for a Lanham Act claim in this case. In light of these arguments, summary judgment should be granted on the Lanham Act claim for two reasons.

First, the undisputed facts in this case show no evidence of a Lanham Act violation. By Masdea's own admission, there were no misrepresentations or false designations on the cover of the first Boston album. Further, upon a review of the law, the mere imitation of a performance, without more, is insufficient to claim trade name infringement under the Lanham Act. *See Booth v. Colgate–Palmolive Co.*, 362 F.Supp. 343, 348–49 (S.D.N.Y.1973) (imitation of performer's voice not sufficient to show violation under section 1125(a) of Lanham Act). Thus, based on the undisputed facts, the defendants are entitled to judgment on the Lanham Act claim as a matter of law.

Second, Masdea has failed to respond to an adequately supported summary judgment motion. Under Rule 56(e), once the moving party has made a properly supported summary judgment motion, the burden shifts to the opposing party to respond with affidavits or further pleadings to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). In this case, Masdea has not responded with any affidavits or any additional pleadings, and Masdea has admitted to the Court that no Lanham Act violation exists. Consequently, Rule 56(e) dictates that summary judgment should be granted for the defendants on the Lanham Act claim.

Having determined that summary judgment should be granted on the Lanham Act claim, this Court no longer has subject matter jurisdiction over this matter. The Lanham Act claim is the only federal law claim in the complaint, and, without it, no federal question jurisdiction exists to hear this case. *See* 28 U.S.C. § 1331.[3] Consequently, this Court must next consider whether to exercise pendent jurisdiction over the state law claims.

## IV.

■ The doctrine of pendent jurisdiction allows federal courts to exercise "jurisdiction over an entire action, including state-law claims, whenever the federal law claims and state-law claims in the case 'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'" *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 349, 108 S.Ct. 614, 618, 98 L.Ed.2d 720 (1988) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966)) (brackets in *Carnegie–Mellon*). Under this doctrine, a federal court should "consider and weigh in each case ... the values of judicial economy, convenience, fairness, and comity" before exercising pendent jurisdiction over state-law claims. *Id.* 484 U.S. at 350, 108 S.Ct. at 619. Where these factors indicate the case properly belongs in state court, a federal court should generally dismiss the case without prejudice. *Id. See also Gibbs*, 383 U.S. at 726–27, 86 S.Ct. at 1138–39.

---

**3.** Upon review of the complaint, this Court notes that federal diversity jurisdiction does not exist in this case. *See* 28 U.S.C. § 1332. Both the plaintiff Masdea and the defendant Scholz are citizens of Massachusetts violating the diversity requirement that all plaintiffs and defendants be citizens of different states. 28 U.S.C. § 1332(a)(1).

The doctrine of pendant jurisdiction, however, "is a doctrine of flexibility, designed to allow courts to deal with cases involving pendant claims in the manner that most sensibly accommodates a range of concerns and values." *Carnegie–Mellon,* 484 U.S. at 350, 108 S.Ct. at 619. Following this principle, the Supreme Court recently held that "a district court has discretion to remand to state court a removed action involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate." *Id.* at 357, 108 S.Ct. at 622. In *Carnegie–Mellon,* the Supreme Court stated that remanding such a case to state court "is precluded neither by the removal statute nor by" prior Supreme Court case law. *Id.*[4]

■ In light of these standards, this Court should not exercise pendant jurisdiction over the remaining state claims in this case. Upon granting summary judgment on the sole federal law claim in this case, this Court no longer has independent subject matter jurisdiction over the remaining state law claims. This Court has not determined any factual issues central to the remaining claims, and, now pared to the state law claims, this case should properly be heard in state court. Finally, since this action began in state court and the only remaining claims are based in state law, principles of fairness and comity favor remanding this case to state court for resolution.

For all the reasons stated above, summary judgment on the Lanham Act claim should be granted and this Court should exercise its discretion under the pendant jurisdiction doctrine to remand this case to Massachusetts Superior Court.

Order accordingly.

---

**4.** In *Carnegie–Mellon,* the Supreme Court faced a procedural background similar to this case. 484 U.S. at 345–46, 108 S.Ct. at 622–23. The plaintiff filed a complaint including principally state law claims with one federal law age discrimination claim. *Id.* at 345, 108 S.Ct. at 623. The defendants removed the action to federal court based on the sole federal law claim. *Id.* at 345–46, 108 S.Ct. at 623–24. Six months later, the plaintiffs amended their complaint which, in part, deleted their federal law claim which served as the sole basis for removal. *Id.* at 346, 108 S.Ct. at 623. After granting the motion to amend, the district court remanded the case to state court for resolution. *Id.*