SETH W. BOYNTON *vs.* SHAW STOCKING COMPANY.

Middlesex.    January 16, 1888. — March 1, 1888.

Present: MORTON, C. J., DEVENS, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Libel — Construction — Character.*

The publication of an article by a manufacturer cautioning the public not to form an opinion of goods of his manufacture from those advertised by a tradesman as of "first quality," since they were sold to him as "damaged," is not actionable as an imputation on the tradesman's character.

TORT for an alleged libel contained in the following words: "Caution: An opinion of Shaw knit hosiery should not be formed from the navy blue stockings advertised as of 'first quality' by Messrs. S. W. Boynton & Co. at 12½ cts., since we sold that firm at less than ten cents a pair some lots which were damaged in the dye-house. [Signed] Shaw Stocking Company. Lowell, May 29, 1886."

At the trial in the Superior Court, before *Thompson,* J., the plaintiff offered evidence tending to prove the following facts:

The plaintiff was the proprietor of a dry goods store, and did

a large business in Waltham, under the style of S. W. Boynton & Co., his customers also coming from the surrounding towns and cities. He had for several years purchased stockings manufactured by the defendant. On May 3, 1886, one Guild, who sold goods of the defendant on commission, called at the plaintiff's place of business and represented that he had a large stock of navy blue first quality Shaw knit stockings to sell, which were in such sizes that the defendant would sell them cheap, as it desired to reduce its very large stock. The plaintiff examined samples of the stock then in Guild's possession, which were first quality navy blue Shaw knit stockings, and, after being assured by Guild that the stock was like the samples and of the very first quality, purchased one hundred dozen pairs. After the receipt of the stockings, and after examining them, the plaintiff caused to be inserted in six issues of " The Charles River Laborer," a weekly paper published in Waltham, and having a large circulation in that place and in surrounding towns and cities, the following advertisement: " Shaw Knit Hose, navy blue, size 8 to 11, first quality goods, at 12½ cts. per pair." Afterwards, the defendant caused the alleged libel to be inserted in six issues of " The Waltham Daily Tribune," a newspaper published in Waltham, and having a large circulation therein and in the surrounding cities and towns.

The plaintiff also offered evidence tending to show that the stockings had not been damaged in the dye-house, and that they were not damaged in any other respect, but were first quality stockings, which the defendant well knew.

On the evidence, the judge ruled that the action could not be maintained, and directed a verdict for the defendant; and the plaintiff alleged exceptions.

*T. Curley*, for the plaintiff. 1. The question of libel or no libel should have been left to the jury, according to the rule laid down in *Twombly* v. *Monroe*, 136 Mass. 464. See *Baylis* v. *Lawrence*, 11 Ad. & El. 920; *Donaghue* v. *Gaffy*, 54 Conn. 257.

2. The natural and necessary meaning of the words contained in the defendant's publication is defamatory of the plaintiff, particularly if taken in connection with the plaintiff's advertisement. Whatever words have a tendency to hurt or are calculated to prejudice a man who seeks a livelihood by any trade or

business are actionable.   *Whittaker* v. *Bradley*, 7 D. & R. 649.
*Fowles* v. *Bowen*, 30 N. Y. 20.     *Orr* v. *Skofield*, 56 Maine, 483.
*Weiss* v. *Whittemore*, 28 Mich. 366.     See Odgers, Libel and
Slander, 30, 31; *Harman* v. *Delany*, 2 Strange, 898; *Jenner* v.
*A'Beckett*, L. R. 7 Q. B. 11.

*J. N. Marshall*, for the defendant.

C. ALLEN, J.   An action will not lie for mere disparagement
of the plaintiff's goods, without averment and proof of special
damage.   *Dooling* v. *Budget Publishing Co.* 144 Mass. 258.   But
the plaintiff contends that the words used by the defendant
contain an imputation upon his character; and that they imply
that he was deceiving the public by advertising goods as of first
quality which he knew were damaged.   The question, therefore,
is this: Taking the words in their natural sense, and without a
forced or strained construction, do they contain this imputation?
If the words may fairly bear that meaning, then the case should
have been submitted to the jury; otherwise not.   *Twombly* v.
*Monroe*, 136 Mass. 464.   *Simmons* v. *Mitchell*, 6 App. Cas. 156.
*Capital & Counties' Bank* v. *Henty*, 7 App. Cas. 741, 744, 771,
772, 790, 793.

We are of opinion that the words, fairly construed, do not
bear that meaning, and that, in order to reach such a construc-
tion, it is necessary to include something which the defendant
did not say, and which its words do not imply.   No doubt a case
might be imagined where, from peculiar circumstances, — as, for
example, from the nature of the article offered for sale, or from
the long continued habit of selling goods of a different char-
acter or quality from that represented, — it would be a natural
inference from a charge otherwise like that which is the subject
of this action, that the party was practising fraud or imposition,
or was guilty of trickery or meanness.   In the present case, such
an inference does not naturally arise, and the object of the de-
fendant's advertisement, judging from its language, appears to
have been rather to uphold and maintain the character of its
goods than to attack the plaintiff's character.   The court might
properly withdraw the case from the jury.   See *Boynton* v. *Rem-
ington*, 3 Allen, 397; *Evans* v. *Harlow*, 5 Q. B. 624; *Solomon*
v. *Lawson*, 8 Q. B. 823.                    *Exceptions overruled.*