MiGi, Inc., & another[1] vs. Gannett Massachusetts
Broadcasters, Inc.

No. 87-154.

Suffolk.   January 14, 1988. — February 19, 1988.

Present: Armstrong, Kaplan, & Warner, JJ.

*Libel and Slander. Malice. Words,* "Fair and accurate."

In a defamation action, summary judgment was properly entered for a tele-
vision broadcasting company against the manufacturer of a certain toy
doll and its sales representative, where the allegedly defamatory news
broadcast, concerning the Department of Public Health's ordering certain
toys off the shelves of retailers, was privileged as a fair and accurate
report of governmental action that was not false with respect to the
plaintiff's doll, which had been displayed briefly during the broadcast.
[396-398]

Civil action commenced in the Superior Court Department
on December 24, 1984.

The case was heard by *Barbara J. Rouse, J.,* on motions
for summary judgment.

*Floyd H. Anderson, Jr.,* for the plaintiffs.

*James J. Dillon (Gordon M. Jones, III,* with him) for the
defendant.

Kaplan, J. On December 13, 1984, during the pre-Christ-
mas shopping season, the Department of Public Health (DPH),
in association with the State Fire Marshal's office of the Depart-
ment of Public Safety, put out a statement, in the form of a
press release, that DPH was "in the process of ordering off
sale all stuffed toys that do not have labels, or those which
have strong petroleum-like odors." Particularly under scrutiny
were "look-alike" dolls imitative of the line of "Cabbage Patch"
dolls that had achieved sweeping popularity at the time. Follow-

---

[1] Mogauro-Shepherd Associates, Inc., intervener.

ing up on the release, Ann Dufresne, a news reporter for Boston television Channel 56, interviewed the deputy director of the State Laboratory Institute, DPH; the director and deputy director of the Food and Drug Division, DPH; and an employee of a Boston convenience store. Dufresne went on the air on the 10:00 P.M. program[2] and broadcast a news story of which the essence was: "They may be cute and cuddly but if they don't carry a manufacturer's label or they smell like kerosene, you probably won't be buying them for your kids this Christmas. After testing several imitation and look-alike Cabbage Patch dolls, state officials are now ordering Massachusetts retailers to pull them off the shelves." Visible on the screen for some moments during the brief broadcast was a cuddly doll. It was a "Smudget" doll.[3] Although Dufresne had learned through the interviews that Smudget was one of the numerous dolls under investigation by State health officials, she did not mention Smudget by name, did not know that the doll exhibited was a Smudget, and was ignorant of the identity of the plaintiffs.[4] By the time of the broadcast, a sizable number of Smudget dolls in retail hands in Massachusetts had been tagged off-sale for noncompliance with the DPH labelling regulations; the dolls, however, were not malodorous.

In due time, MiGi, Inc., the manufacturer in New Hampshire of Smudget dolls, commenced the present action against Gannett Massachusetts Broadcasters, Inc. (Gannett), owner and operator of Channel 56, making the claim (among others) that the broadcast was a libel upon it and demanding damages of $10 million. Mogauro Shepherd Associates, Inc. (Mogauro), MiGi's sales representative for New England, was permitted to intervene as a party plaintiff with a claim for $5 million.

---

[2] Also appearing on the program were the director of the Food and Drug Division and the store employee.

[3] The defendant Gannett believes the doll was not a Smudget, but we assume it was for purposes of summary judgment.

[4] There was a further broadcast about the State investigation the following day, December 14. The Smudget doll was not exhibited.

Upon papers, which in various details amplify the foregoing account, the defendant Gannett secured summary judgment dismissing the complaints, and the plaintiffs appeal.[5]

The plaintiffs chose to press the action as one for defamation rather than for "disparagement" of the quality of goods, sometimes called "trade libel": for the distinction, see *Boynton* v. *Shaw Stocking Co.*, 146 Mass. 219, 221 (1888); Restatement (Second) of Torts § 626 comment b, § 629 comment e (1976). In that view, there might be doubt whether any observers of the broadcast would connect the alleged defamation with the plaintiff MiGi, and greater doubt whether they would connect it with the plaintiff Mogauro; to be actionable, defamatory matter must of course be shown in some objective sense to be "of and concerning" the complainant. See Restatement, *supra*, § 613; *New England Tractor-Trailer Training of Conn., Inc.* v. *Globe Newspaper Co.*, 395 Mass. 471 (1985). Whether Mogauro's claim was too remotely derivative from any that MiGi could assert would present itself as a cognate problem. Cf. *Merrill* ·v. *Post Publishing Co.*, 197 Mass. 185 (1908); *Kesner* v. *Liberty Bank & Trust Co.*, 7 Mass. App. Ct. 934 (1979). These issues, however, may be bypassed.

The broadcast, putting aside the showing of a Smudget, was privileged as a fair and accurate report of governmental action (companion to the privilege to report judicial proceedings). See Restatement, *supra*, § 611 comment d; *Ingenere* v. *American Broadcasting Cos.*, 11 Media L.R. 1227, 1228 (D. Mass. 1984). Cf. *Sibley* v. *Holyoke Transcript-Telegram Publishing Co.*, 391 Mass. 468, 470-472 (1984). To be "fair and accurate" for the purpose, the report herein need not have duplicated or tracked the official statement; enough that it gave a rough-and-ready summary that was substantially correct. See *Ricci* v. *Venture Magazine, Inc.*, 574 F. Supp. 1563, 1567 (D. Mass.

---

[5] Field Communications Corp. was named as a defendant in the complaint and, together with Gannett, was alleged to be a corporation "licensed . . . to broadcast and transmit over Television Channel No. 56." Gannett filed an answer which denied that allegation and stated that "only Gannett . . . is duly licensed . . . to broadcast and transmit . . . over Channel No. 56." The judge and the parties below appear to have proceeded as if Gannett was the sole defendant.

1983). Such a privilege would not be lost if the substance of the official statement, and hence of the report, was false; indeed, according to an emergent rule, the privilege should not be forfeited even if the party making the report knew the statement to be false. See Restatement, *supra*, § 611 comment a; Prosser & Keeton, Torts § 115, at 836-838 (5th ed. 1984). But see 2 Harper, James & Gray, The Law of Torts § 5.24 at 208-210 (2d ed. 1986). It is often said that the benefits of this privilege are forgone where a complainant shows that the reporter was actuated by malice toward him. But "malice" would require some redefinition if it were taken not to comprehend knowing falsehood; perhaps repetition of such falsehood with a purpose to do the complainant maximum injury would still qualify as malice. Cf. *Bander* v. *Metropolitan Life Ins. Co.*, 313 Mass. 337, 344 (1943).

There is no occasion to tread further the dusty path of "malice." The case may rather be reduced to the question how the showing of the Smudget doll should be considered to relate to the report. In her thoughtful memorandum, the judge below considered the representation of the doll to be part of the intrinsic report. From another angle, the picture of the doll might be seen as distinct from the report and in effect an independent statement about the plaintiffs — for the official statement did not refer in particular to the Smudget. The judge held that the report remained fair and accurate, and the privilege remained intact, notwithstanding the inclusion of the display of the doll. On the other line of analysis, the claim would defeat itself without invocation of a privilege. The reason in either alternative is that there was no falsity.[6] The statement and report pointed to stuffed dolls that were objectionable in respect to labelling or odor. A viewer of the broadcast, if he took the Smudget to be at all illustrative of any targeted dolls,

---

[6] If the display of the doll were conceived to be an independent charge, the defendant would contend that the matter was of public concern, so that liability would turn on whether there was knowing falsity or reckless disregard of the truth on the defendant's part. See *Gertz* v. *Robert Welch, Inc.*, 418 U.S. 323, 351-352 (1974). This issue is obviated because truth is shown on the face of the record.

would reason that it was defective in one or the other respect or both; further inquiry would be needed to elucidate the point. On such inquiry it would be found that Smudget dolls on the market in fact had been tagged off-sale on the score of labelling. Thus we conclude that the present case was ripe for judgment for the defendant on the defamation claim asserted by MiGi, and so on the like claim by Mogauro.

The complaints attempted to set out certain theories in addition to defamation but, as the judge held, these failed, and we understand that the plaintiffs have abandoned them.

*Judgment affirmed.*