Sabra, J.
The plaintiffs, Bourne Sunoco and its owner, Eli Yousef, claim that the defendants, Community Newspaper Company and Paul Gately (hereinafter “Community Newspaper” and “Gately,” respectively), defamed them in a news article which appeared in the Bourne Courier, a paper published by the defendant, Community Newspaper. The district court judge allowed the defendants’ motion for summary judgment, which allowance is the subject of this appeal.
The two issues presented by this appeal are whether the news article was false and defamatory as a matter of law and whether, in any event, the article was protected by the fair report privilege. We find no error and affirm the judgment for the defendants.
The article in controversy was primarily based upon a legal notice submitted for publication by the Department of Environmental Protection, an agency which was legally required to publish the notice pursuant to the Massachusetts Contingency Plan (310 CMR 40.0480). The legal notice was published in the Courier on February 12,1998. Contained in the legal notice was the fact that an “Initial Site Investigation” Tier II classification had been performed at the Bourne Sunoco service station. It further stated:
A release of oil and/or hazardous materials has occurred at this location which is a disposal site (defined by M.G.L.c. 21E, Section 2).
The notice indicates that a certain project manager for Groundwater & Environmental Services, Inc. “will be” conducting “response actions” at the site. Further, the notice provides general information as to how the public can obtain more information and who to contact at the Sun Company, Inc. (the corporate name of Sunoco) to obtain information “on this disposal site” or the “remediation” process. Absent from the notice is any mention of when the release of oil and/or hazardous materials occurred.
On the same date, an article authored by Gately, a freelance journalist, appeared in the Courier regarding the proliferation of gas stations along Main Street in Buzzards Bay on Cape Cod. The article was entitled “Gasoline Alley” and was accompanied by a photograph of the Bourne Sunoco service station. Gately had, in the course of his investigation on the first article, become aware of the DEP legal notice and wrote a second article entitled “Gas Leak is under Spotlight” which also appeared as a supplemental piece on the same date and on the same page as the first article.
*127 The “Gas Leak” article reported that “state environmental officials and a private cleanup firm are completing their investigation into a minor gas leak at the Sunoco station.” Also noted is the fact that the leak was classified at the lowest level for leaks and allowed owners to continue operating while repair work was done on the damaged tank. The article goes on to say that a report is being completed by the Groundwater & Environmental Services, Inc., “but the results do not yet assess the extent of the problem.” The article mentions that a pond is located behind the station and quotes a company spokesman as saying, “We haven’t yet defined the scope of the contamination.” It concludes by saying that “Selectmen and the town’s natural resources department had not been notified of the Sunoco leak last week.”
The gist of the appellants’ claim on appeal is that the defendants defamed Bourne Sunoco and Yousef by leaving the impression that its underground fuel tanks were currently leaking, that the station is under investigation by environmental officials, and that the extent of the contamination to the environment including the pond is not yet known. Appellants further insist that this impression was false and defamatory because the defendants knew or, by reasonable investigation could have learned, that the information conveyed was dated and not current. Citing a report of the investigation by Groundwater & Environmental Services, Inc. upon which Gately supposedly relied, the plaintiff asserts that the defendants could have reported that it was in 1992 that a minor fuel leak at the Sunoco station occurred prior to Yousef’s ownership of the station. In addition, the fact that the old tanks were replaced by new state-of-the-art underground tanks in 1992 and that no contamination resulted, was not reported by the defendants.
The threshold inquiry is whether the statements in the “Gas Leak” article are defamatory or “reasonably susceptible” of a defamatory meaning. Jones v. Taibbi, 400 Mass. 786, 791 (1987); see also Brown v. Hearst Corp., 54 F.3d 21 (1st Cir. 1995) (“defamation can occur by innuendo as well as by explicit assertion”). It is for the court to decide whether a communication is capable of a defamatory meaning. Jones v. Taibbi, 400 Mass. at 792; RESTATEMENT (SECOND) OF TORTS, Section 614 comment b (1977). The general test of whether a writing is defamatory is whether the words “would tend to hold the plaintiff up to scorn, hatred, ridicule or contempt, in the minds of any considerable and respectable segment in the community.” Stone v. Essex Newspapers, Inc., 367 Mass. 849, 853 (1975).
It is noteworthy that the plaintiff does not contend that the facts as stated in the article are false. Rather, the thrust of the plaintiffs’ assertion is that, by not reporting the other information about the gas leak in 1992 and the substance of the Groundwater report, the reader was left with an inaccurate impression that there was a current leak as of the time of publication. This negative impression, claim the plaintiffs, caused them embarrassment.
In considering Yousef’s claim of defamation, it is clear that Yousef’s name was never mentioned in either of the articles or the legal notice. Thus, one is hard-pressed to find that Yousef’s reputation was diminished by the article since there is no connection to him personally. We conclude, therefore, that Yousef “failed to demonstrate a genuine issue of material fact as to how [he] was personally defamed and thus the entry of summary judgment against [him] was appropriate on the defamation count on that basis alone.” ELM Medical Laboratory, Inc. v. RKO General, Inc., 403 Mass. 779, 785 (1989).
We need not decide whether the “Gas Leak” article was defamatory as to Bourne Sunoco for, even if it was, we find that it was entitled to a qualified privilege as a matter of law. MiGi, Inc. v. Gannett Massachusetts Broadcasters, Inc., 25 Mass. App. Ct. 394 (1988). The so-called “fair report” privilege applies to “those who fairly and accurately report... official or governmental action.” ELM Medical Laboratory, Inc. v. RKO General, Inc., 403 Mass. 779, 782 (1989). It is based upon *128 the recognition that “(1) the public has a right to know of official governmental actions that affect the public interest, (2) the only practical way many citizens can learn of these actions is through a report by the news media, and (3) the only way news outlets would be willing to make such a report is if they are free from liability, provided that their report was fair and accurate.” Id.
We find that as a matter of law the article was “fair and accurate” as that has been defined by case law. The test is whether a reporter’s “rough and ready summary” of a proceeding is “substantially correct.” MiGi, Inc. v. Gannett Massachusetts Broadcasters, Inc., supra at 396. Against this standard, the “Gas Leak” article has not been shown to contain any “significant inaccuracies.” Nor has Bourne Sunoco shown that there was any exculpatory evidence that the defendants wrongly withheld. See Brown v. Hearst Corp., 54 F.3d 21, 26 (1st Cir. 1995). The article clearly conveyed that the investigation was not yet complete, that the leak was minor, and made no definitive statement concerning what, if any, contamination had occurred. In this respect, the article was not inaccurate in reporting the status of the investigation.
The most that can be said about the article’s accuracy is that it did not contain the historical information pertaining to the leak discovered and presumably resolved in 1992. But since the legal notice and the Groundwater report were dated in February of 1998 and still indicated the pendency of the investigation, it can hardly be said that the article was inaccurate merely because of the historical omissions. It should also be noted that the Groundwater report (included in the Appendix of this appeal) indicated that monitoring wells adjacent to the gasoline storage tanks of Bourne Sunoco “contained detectable concentrations of volatile organic compounds (VOC’s) during recent groundwater sampling.” The report is dated February 4,1998, and thus indicates the possible presence of contaminants at the time of the publication.
We therefore find that the article was privileged as a fair and accurate report of governmental action. MiGi, Inc. v. Gannett Massachusetts Broadcasters, Inc., 25 Mass. App. Ct. 394 (1988).
Finally, even if the fair report privilege were not applicable, Bourne Sunoco’s claim of defamation must fail. Where, as here, the plaintiff was drawn into a particular public controversy, Bourne Sunoco achieved public figure status for a limited range of issues dealing with the gas leak and its environmental impact. ELM Medical Laboratory, Inc. v. RKO General, Inc., 403 Mass. at 786. As such, the plaintiff must prove with clear and convincing evidence that the defendants acted with actual malice in order to survive the defendants’ motion for summary judgment. Id. Specifically, Bourne Sunoco was required to show facts from which a jury reasonably could conclude that the publication contained false and defamatory statements and were printed with knowledge that they were false or with reckless disregard of whether they were true or false. Stone v. Essex County Newspapers, Inc., 367 Mass. 849, 867 (1975). This they failed to do.
In sum, summary judgment was appropriate in this case because the plaintiff failed to present any evidence from which the motion judge could draw an inference of actual malice. See Godbout v. Cousens, 396 Mass. 254, 258-259 (1985).
Accordingly, the allowance of defendants’ motion for summary judgment is affirmed.
So ordered.