Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| ILDEFONSO TORRES RODRÍGUEZ, NYDIA I. SANTANA SEGARRA<br><br>Recurrido<br><br>V.<br><br>YESENIA TORRES FIGUEROA, NOTICENTRO DE PUERTO RICO, TELEVICENTRO OF PUERTO RICO LLC, WAPA TELEVISIÓN, REPRESENTADA POR EL SR. JAVIER MAYNULET MONTILLA, SU COMPAÑÍA ASEGURADORA AIG SPECIALTY INSURANCE COMPANY, ALEX DELGADO Y SU ESPOSA JULISSA DE LA CRUZ CABRERA Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS, CORPORACIÓN X, Y RICHARD ROE<br><br>Peticionarios | KLCE202500200 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Caso Núm.:<br>PO2019CV03619<br><br>Sobre:<br>Daños y Perjuicios |

Panel integrado por su presidente, el Juez Candelaria Rosa, la Jueza Díaz Rivera y la Juez Lotti Rodríguez.[1]

Lotti Rodríguez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 17 de junio de 2025.

I.

Tras concluir que el privilegio del reporte justo y verdadero invocado por los peticionarios (Sr. Delgado Rosado, Sra. Torres Figueroa, Sr. Maynulet Montilla y Televicentro of Puerto Rico, LLC h/n/c WAPA TV) no es aplicable a la divulgación de un memorando confidencial del Negociado de Investigaciones Especiales del

---

[1] Conforme la OATA-2025-078 del 14 de mayo de 2025, mediante la cual se asignó a la Juez Glorianne M. Lotti Rodríguez en sustitución de la Hon. Grace Grana Martínez.

Número Identificador

SEN2025 _____

Departamento de Justicia, el 11 de agosto de 2021, el Tribunal de Primera Instancia ordenó la divulgación de la fuente periodística a la parte recurrida (Sr. Torres Rodríguez y Sra. Santana Segarra). En desacuerdo con el dictamen del foro primario, el 27 de septiembre de 2021, los peticionarios instaron un recurso de *Certiorari* ante este foro revisor. En esencia, un panel hermano determinó que el memorando interno no se encuentra protegido por el privilegio del reporte justo y verdadero.

Aún inconforme, el 10 de enero de 2022, la parte peticionaria compareció al Tribunal Supremo de Puerto Rico mediante un recurso de *Certiorari*. Posteriormente, el 31 de octubre de 2022, dicho Tribunal revocó el dictamen emitido por este foro revisor. *Torres Rodríguez v. Noticentro de Puerto Rico*, 210 DPR 783 (2022). En su decisión, resolvió que le correspondía al tribunal de instancia determinar si, en efecto, la identidad de la fuente periodística era pertinente para evaluar si la información divulgada era difamatoria. Además, se determinó que, de entender que la información fuese pertinente a la causa de acción, el foro primario debe establecer si se configuraban los requisitos de algún privilegio.

Luego de varios trámites procesales, y como consecuencia del dictamen emitido por nuestro más alto foro en *Izquierdo II v. Cruz*, 213 DPR 607 (2024), en el que se reconoció la existencia del privilegio del periodista en Puerto Rico, el Tribunal de Primera Instancia emitió una *Orden* el 7 de marzo de 2024. Mediante esta, se concedió a las partes un término veinte (20) días para presentar memorandos exponiendo su posición sobre dicho dictamen.

Así las cosas, el 10 de enero de 2025, el Tribunal de Primera Instancia emitió una *Resolución* en la que ordenó a la parte peticionaria divulgar la identidad de Richard Roe. El foro primario determinó que es pertinente la identidad de Richard Roe por la siguientes razones: (1) explicará la motivación que tuvo para

cometer delito; (2) explicará la motivación que tuvo para sacar de un sumario fiscal información privilegiada; y (3) explicará la motivación que tuvo para entregarla al señor Alex Delgado; (4) establecer que vínculo tenía con el señor Walter Maldonado; (5) explicará que lo motivó o que beneficio obtuvo; y (6) explicará qué fue lo que dijo sobre la investigación al comunicarse con el señor Alex Delgado. Además, el foro *a quo* concluyó que el recurrido cumplió con los requisitos delimitados en *Izquierdo II v. Cruz, supra.* En ese sentido, dispuso que el privilegio del informe justo y verdadero no les aplica a los peticionarios por lo que tenían que divulgar la identidad del confidente.

El 27 de enero de 2025, la parte peticionaria presentó una *Moción* de *Reconsideración,* la cual fue declarada Sin Lugar por el Tribunal mediante *Resolución* emitida el 28 de enero de 2025.

Inconforme con dicha determinación, el 27 de febrero de 2025 la parte peticionaria acudió ante nos mediante *Certiorari.* Plantea:

> **Incidió el [Honorable] TPI al concluir que la identidad de Richard Roe es pertinente para adelantar su causa de acción por difamación y otra por el Artículo 1802.**
>
> **Incidió el [Honorable] TPI al concluir que el privilegio de "Fair Report" no está disponible cuando el documento en el que descansa el mismo no es de libre acceso en violación al estándar mínimo federal.**
>
> **Incidió el [Honorable] TPI al concluir que el demandante-recurrido cumplió su obligación de establecer los requisitos que impiden que se active el privilegio de reportero.**

El 6 de marzo de 2025 la parte recurrida presentó *Moción sobre primera comparecencia y en solicitud de prórroga.* El 12 de febrero de 2025 emitimos *Resolución* concediendo la prórroga solicitada. El 13 de marzo de 2025 la parte recurrida presentó *Alegato del Demandante Recurrido.*

Alegó, entre otros asuntos relacionados con la causa de acción por difamación, que no existe controversia sobre que el demandante

posee información respecto a quien redactó el memorando y de quienes fueron, presuntamente, las personas que proveyeron la información utilizada por el Agente para prepararlo. No obstante, sí existe controversia en torno a la veracidad de lo escrito en dicho documento.[2] Agregó que la identidad de la persona desconocida Richard Roe es pertinente, ya que "explicará la motivación que tuvo para cometer delito y sacar de un sumario fiscal información privilegiada y entregarla al Sr. Alex Delgado, establecer qué vinculo tenía con el Sr. Walter Maldonado, y qué lo motivó o qué beneficio obtuvo, qué fue lo que dijo sobre la investigación en etapa preliminar y confidencial al llamar al Sr. Alex Delgado y hacerle entrega del documento prohibido".[3]

Adujo que el hecho de que Richard Doe entregara al Sr. Delgado el memorando confidencial constituyó un acto ilegal, tipificado como delito, que le causó daños. Por tanto, sostuvo que, en lo relativo a la causa de acción por daños, la identidad de la fuente periodística también es pertinente. Añadió que el privilegio del reporte justo y verdadero debe ceder ante el interés público de proteger la confidencialidad del sumario fiscal. Además, planteó que no resulta aplicable el privilegio del periodista, ya que se cumplieron los requisitos establecidos en *Izquierdo II v. Cruz, supra.*

Con el beneficio de la comparecencia de las partes, el Derecho y jurisprudencia aplicables, resolvemos.

## II.

## A.

El recurso de *certiorari* es un mecanismo procesal de carácter discrecional que faculta a un tribunal de mayor jerarquía a revisar las decisiones emitidas por un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Torres González v.*

---

[2] *Alegato del Demandante Recurrido*, pág. 40.
[3] *Id.*

*Zaragoza Meléndez,* 211 DPR 821, 486-487 (2023); *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021). "[L]a característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". *Rivera et al. v. Arcos Dorados et al., supra,* pág. 209; *IG Builders et. al. v. BBVAPR,* 185 DPR 307, 338 (2012). Sin embargo, la discreción para expedir el recurso no es irrestricta, ni autoriza al tribunal a actuar de una forma u otra en abstracción del resto del Derecho. *Pueblo v. Rivera Montalvo,* 205 DPR 352, 372 (2020) (citando a *Negrón v. Srio. De Justicia,* 154 DPR 79, 91 (2001)); *Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723, 728-729 (2016).

En lo pertinente, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R.52.1, delimita nuestra autoridad y prohíbe la intervención en las determinaciones interlocutorias emitidas por el Tribunal de Primera Instancia, salvo en contadas excepciones. *Scotiabank de Puerto Rico v. Zaf Corporation,* 202 DPR 478, 486-487 (2019). Lo previamente señalado persigue evitar dilaciones al revisar controversias que pueden esperar a ser planteadas a través del recurso de apelación. *Id.* Así pues, la Regla 52.1 de Procedimiento Civil, *supra,* dispone que podemos expedir el recurso de *certiorari* para resolver resoluciones u órdenes interlocutorias dictadas por el foro primario cuando:

> [S]e recurra de una resolución u orden bajo las Reglas 56 [Remedios Provisionales] y 57 [*Injuction*] o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias [...] cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. 32 LPRA Ap. V, R. 52.1.

A esos efectos, acreditada debidamente nuestra autoridad para intervenir en el asunto recurrido, la Regla 40 de nuestro Reglamento, establece los criterios que deben guiar nuestra determinación sobre si procede o no expedir un auto de *certiorari.* *Rivera et al. v. Arcos Dorados et al., supra,* pág. 209; *Mun. de Caguas v. JRO Construction,* 201 DPR 703, 710-711 (2019). Los criterios esbozados son los siguientes:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

> (F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Ahora bien, ninguno de los criterios antes citados es determinante, por sí solo, para este ejercicio y no constituye una lista exhaustiva. *García v. Padró,* 165 DPR 324, 335 esc. 15 (2005) (citando a H. Sánchez Martínez, *Derecho Procesal Apelativo,* Hato Rey, Lexis-Nexis de Puerto Rico, 2001, pág. 560). Por lo general, los tribunales revisores no intervienen con el manejo de los casos de los tribunales de instancia, salvo cuando "se demuestre que este último actuó con prejuicio o parcialidad, que hubo un craso abuso de discreción, o que se equivocó en la interpretación o aplicación de alguna norma procesal o de derecho sustantivo". *Rivera y Otros v. Bco. Popular,* 152 DPR 140, 155 (2000) (citando a *Lluch v. España*

*Service Sta.*, 117 DPR 729, 745 (1986)). En tal sentido, al optar por no expedir el auto solicitado, no se está emitiendo una determinación sobre los méritos del asunto o cuestión planteada, por lo que esta puede ser presentada nuevamente a través del correspondiente recurso de apelación. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008); *García v. Padró, supra*, 336 (2005).

B.

La Sección 4 del Art. II de nuestra Constitución dispone que "[n]o se aprobará ley alguna que restrinja la libertad de palabra o de prensa. . .". Art. II, Sec. 4, Const. PR, LPRA, Tomo 1. Por su parte, la Sección 8 del mismo artículo establece que "[t]oda persona tiene derecho a protección de ley contra ataques abusivos a su honra, a su reputación y a su vida privada o familiar". *Id.* De esta última disposición emana la protección constitucional contra actos difamatorios. Ciertamente, "[l]as acciones de difamación plantean la necesidad de balancear el derecho a la libre expresión y la libertad de prensa, que comprende el interés del pueblo en fomentar el debate vigoroso sobre cuestiones de interés público, y el derecho a la intimidad de los individuos". *Gómez Márquez et al. v. El Oriental*, 203 DPR 783, 795 (2020) (citando a *Maldonado y Negrón v. Marreo y Blanco*, 121 DPR 705, 713 (1988)). "[E]s a nuestro ordenamiento jurídico al que debemos acudir para sopesar los intereses involucrados en casos de difamación. En este campo, la jurisprudencia norteamericana tiene solamente carácter ilustrativo o persuasivo, salvo las limitaciones impuestas por la Constitución federal y a la jurisprudencia interpretativa del Tribunal Supremo de Estados Unidos". *Colón Pérez v. Televicentro de P.R.*, 175 DPR 690, 709 (2009) (citando a *Clavell v. El Vocero de P.R.*, 115 DPR 685 (1984)).

Los elementos constitutivos de la causa de acción por difamación dependerán, en primera instancia, de si el demandante es una figura privada o una figura pública. Para que una figura privada tenga éxito en su causa de acción por libelo, deberá probar: (1) que la información es difamatoria y falsa, (2) que la publicación se hizo de forma negligente, y (3) que se le causaron daños reales. De manera que, en casos de figuras privadas, dicha acción es una de daños y perjuicios basada en negligencia. *Pérez Rosado v. El Vocero de P.R.*, 149 DPR 427 (1999). Véase *Meléndez Vega v. El Vocero,* 189 DPR 123, 196 (2013); *Villanueva v. Hernández Class*, 128 DPR 618, 642-643 (1991); *González Martínez v. López,* 118 DPR 190, 192-193 (1987); *Clavell v. El Vocero de P.R.*, 115 DPR 685, 692 (1984); *Torres Silva v. El Mundo,* 106 DPR 415, 421 (1977).

Los criterios que deben considerarse para determinar negligencia en la publicación de información difamatoria en cuanto a una persona privada son: "(i) la naturaleza de la información publicada, la importancia del asunto de que se trata y especialmente si ésta es difamatoria de su propia faz y puede preverse el riesgo de daños, (ii) el origen de la información y confiabilidad de su fuente y (iii) la razonabilidad del cotejo de la veracidad de la información tomando en consideración el costo en términos de dinero, tiempo, personal, urgencia de la publicación, carácter de la noticia y cualquier otro factor pertinente". *Pérez Rosado v. El Vocero de P.R.*, *supra*, pág. 448 (Énfasis en el original omitido) (citando a *Torres Silva v. El Mundo Inc.*, 106 DPR 415 (1977)).

En cambio, para que un funcionario público prospere en un caso de difamación tiene que probar, con prueba directa o circunstancial que: (1) la expresión difamatoria es falsa, (2) que se publicó a sabiendas de que era falsa o con grave menosprecio de su falsedad o veracidad, es decir, con malicia real, y (3) que dicha publicación le causó daños reales. *Meléndez Vega v. El Vocero de PR,*

189 DPR 123, 148-149 (2013) (citando a *Garib Bazain v. Clavell,* 135 DPR 475 (1994); *Villanueva v. Hernández Class, supra,* pág. 642; *García Cruz v. El Mundo, Inc.,* 108 DPR 174, 178 (1978); *New York Times Co. v. Sullivan,* 376 U.S. 254, 288-292 (1964)).

C.

La Regla 23.1 de Procedimiento Civil dispone lo relacionado al del descubrimiento de prueba. 33 LPRA Ap. V, R. 23.1. En lo pertinente, dicha regla señala lo siguiente:

> [L]as partes podrán hacer descubrimiento sobre cualquier materia, no privilegiada, que sea **pertinente** al asunto en controversia en el pleito pendiente, ya se refiera a la reclamación o defensa de cualquier otra parte, incluso la existencia, descripción, naturaleza, custodia, condición y localización de cualesquiera libros, información almacenada electrónicamente, documentos u otros objetos tangibles y la identidad y dirección de personas que conozcan hechos pertinentes. No constituirá objeción el que la información solicitada sea inadmisible en el juicio, siempre que exista una probabilidad razonable de que dicha información conduzca al descubrimiento de evidencia admisible. *Id.* (Negrilla suplida).

El descubrimiento de prueba es el mecanismo utilizado por las partes para "obtener hechos, título, documentos u otras cosas que están en poder del demandado o que son de su exclusivo conocimiento y que son necesarias [...] para hacer valer sus derechos". *McNeil Healthcare, LLC v. Municipio de Las Piedras*, 206 DPR 659, 672 (2021) (citando a Rivera García, *Diccionario de términos jurídicos*, 3ra ed. rev., San Juan, Ed. LexisNexis, 2000, pág. 70).

El alcance del descubrimiento de prueba debe ser uno amplio y liberal, de manera que se logren soluciones justas, rápidas y económicas a las controversias existentes entre las partes. *Cruz Flores v. Hospital Ryder Memorial Inc.*, 210 TSPR 465 (2022); *Berríos Falcón, et al. v. Torres Merced*, 175 DPR 962, 971 (2009); *Rodríguez Rosa v. Syntex*, 160 DPR 364, 394 (2003); *Rivera y Otros v. Bco. Popular*, 152 DPR 140, 152 (2000). Esto debido a que, utilizando de

manera adecuada este mecanismo, se aceleran los procedimientos, las transacciones y, se evitan sorpresas indeseables durante la celebración del juicio. *McNeil Healthcare, LLC v. Municipio de Las Piedras, supra,* pág. 673.

No obstante, nuestro ordenamiento establece dos restricciones a dicho mecanismo: (1) que la información objeto del descubrimiento no sea **privilegiada** y (2) que la misma sea **pertinente** al asunto o controversia. *Cruz Flores v. Hospital Ryder Memorial, supra*; *McNeil Healthcare, LLC v. Municipio de Las Piedras, supra; Rivera y Otros v. Bco. Popular, supra.* (Negrilla suplida). En relación con el concepto de pertinencia, este es mucho más amplio que el empleado en el área del derecho probatorio para la admisibilidad de la prueba. *Alvarado v. Alemañy,* 157 DPR 672, 683 (2002); *García Rivera et al. v. Enríquez,* 153 DPR 323, 333 (2001); *Medina v. M.S. & D. Química P.R., Inc.*, 135 DPR 716, 731 (1994).

En ese sentido, la Regla 401 de Evidencia define evidencia pertinente como "aquélla que tiende a hacer la existencia de un hecho, **que tiene consecuencias para la adjudicación de la acción, más probable o menos probable de lo que sería sin tal evidencia**. Esto incluye la evidencia que sirva para impugnar o sostener la credibilidad de una persona testigo o declarante". 32 LPRA Ap. IV, R.401. (Negrilla suplida). Véase, también *Pueblo v. Santiago Irizarry*, 198 DPR 35 (2017). En términos prácticos, la evidencia pertinente "es aquella que es capaz de arrojar luz o que tiene algún valor probatorio, por mínimo que sea, para la adjudicación de la acción". E.L. Chiesa Aponte, *Reglas de evidencia comentadas*, San Juan, Eds. Situm, 2016, págs. 71–72. A su vez, la Regla 402 del mismo conjunto reglamentario indica que la evidencia pertinente es admisible, salvo cuando se disponga lo contrario por imperativo constitucional, por disposición de ley o por

estas Reglas. Sin embargo, la evidencia que no es pertinente será inadmisible. 32 LPRA Ap. IV, R.402.

En lo que atañe a los privilegios, en particular, el privilegio cualificado del periodista, el Tribunal Supremo de Estados Unidos resolvió en *Branzburg v. Hayes*, 408 U.S. 665 (1972), que exigir a los periodistas que comparezcan y testifiquen ante un gran jurado estatal o federal no vulnera la libertad de expresión y de prensa garantizada por la Primera Enmienda. No obstante, se explicó que no se pone en duda la importancia de la libertad de expresión, de prensa o de reunión para el bienestar del país. *Branzburg v. Hayes, supra,* pág. 681. Según se desprende de la opinión mayoritaria:

> Tampoco se sugiere que la recopilación de noticias no esté protegida por la Primera Enmienda; sin algún grado de protección en la búsqueda de noticias, la libertad de prensa podría ser eviscerada. Pero, estos casos [ante su consideración] no implican intrusiones con la libertad de expresión o de reunión, ni censura previa o restricciones sobre lo que la prensa puede publicar, ni órdenes explícitas o implícitas para que la prensa publique lo que prefiere retener. (Traduccion suplida). *Id.*

Al respecto, el Juez Powell señaló en su opinión concurrente que "[e]l Tribunal no sostiene que los periodistas, citados para testificar ante un gran jurado, carezcan de derechos constitucionales en relación con la recopilación de noticias o la protección de sus fuentes". *Branzburg v. Hayes, supra,* pág. 709. En consecuencia, para resolver dichas cuestiones, propuso sopesar los preceptos constitucionales e intereses sociales caso a caso. *Id.* pág. 710. "[T]he courts will be available to newsmen under circumstances where legitimate First Amendment interests require protection." *Id.* pág. 724. Por otro lado, el Juez Stewart, en su opinión disidente, propuso un análisis para autorizar la revelación de las fuentes periodísticas. Es decir, el privilegio podría ceder si el Gobierno demuestra:

(1) que existe causa probable para creer que el periodista tiene información relevante para una probable violación específica de la ley; (2) que la información solicitada no puede obtenerse por medios alternativos menos destructivos de los derechos de la Primera Enmienda; y (3) un interés imperioso y primordial en la información. *Branzburg*, 408 U.S. 665, en 743. (traducción suplida).

Como sabemos, *Branzburg v. Hayes, supra,* abrió la puerta para que los tribunales inferiores interpreten y reconozcan el privilegio cualificado del periodista. Véase, además, *Bartnicki v. Vopper,* 532 U.S. 514 (2001); *Press Enterprise Co. v. Superior Court,* 478 US 1 (1986); *Zerilli v. Smith,* 656 F.2d 705 (D.C. Cir. 1981); *Smith v. Daily Mail Publishing Co.,* 443 US 97 (1979); *Cox Broadcasting Corp. v. Cohn,* 420 US (1975); *Cervantes v. Time, Inc.,* 464 F.2d 986 (8.o Cir. 1972).

Recientemente, nuestro máximo foro judicial, en *Izquierdo II v. Cruz,* 213 DPR 607 (2024), reconoció la existencia del privilegio cualificado del periodista en Puerto Rico. La decisión buscó armonizar el delicado balance de intereses que plantean los casos de libelo y difamación frente a los derechos constitucionales de mayor jerarquía en nuestro ordenamiento jurídico: el derecho la libertad de expresión y de prensa, así como el derecho al honor y a la reputación. Véase, Art. II, Sec. 4 y 8 de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA, Tomo 1. Dicho foro reafirmó que, tanto en la jurisdicción federal como en la estatal, "**existe consenso en que las órdenes para obligar a la divulgación de las fuentes confidenciales no deben ser automáticas, por lo que los tribunales han denegado este tipo de descubrimiento cuando no se logra demostrar la relevancia, la necesidad, el agotamiento de fuentes alternativas o que el caso contra el periodista sea potencialmente meritorio**". *Izquierdo II v. Cruz, supra,* págs. 626-627.

Por consiguiente, se desarrolló un análisis dirigido a determinar si resulta procedente requerir al periodista la divulgación de sus fuentes o de información confidencial. Este análisis debe iniciar, como en cualquier proceso de descubrimiento de prueba, con el criterio de pertinencia. Entonces, una vez se establezca que la identidad de la fuente periodística o la información confidencial es pertinente para la adjudicación de la acción, corresponde al tribunal examinar si la parte interesada en descubrir la información solicitada ha presentado evidencia que demuestre: **"(1) que lo publicado es falso y difamatorio; (2) que empleó esfuerzos razonables para descubrir la fuente o la información confidencial por otros medios, y (3) que es necesario conocer la identidad de la fuente o la información confidencial para establecer su causa de acción"**. (Negrilla suplida). *Izquierdo II v. Cruz, supra,* pág. 630. En consecuencia, cuando se cumplen los requisitos exigidos, el privilegio del periodista a no divulgar sus fuentes o informaciones confidenciales cede ante "el interés de la parte que demuestra la necesidad de la divulgación, por lo que el periodista podrá ser compelido a producir la información solicitada". *Id.*

En resumen, el privilegio cualificado del periodista constituye el mecanismo idóneo dentro de nuestro ordenamiento jurídico para "vedar las solicitudes caprichosas y arbitrarias que busquen descubrir injustificadamente las fuentes e informaciones confidenciales en un caso civil sobre libelo". *Izquierdo II v. Cruz, supra,* pág. 631.

Al respecto, la Ley Libelo y Calumnia de Puerto Rico, Ley de 19 de febrero de 1902, regula lo concerniente a reclamaciones por difamación y reconoce una acción civil por daños y perjuicios al amparo del Art. 1802 del Código Civil de Puerto Rico de 1930, disposición que actualmente se encuentra recogida en el Art. 1536

del Código Civil de 2020. 32 LPRA secs. 3141-3149. Dicho estatuto es aplicable en cuanto sea compatible con los principios constitucionales que rodean la acción por difamación. J.J. Álvarez González, *Derecho constitucional de Puerto Rico y relaciones constitucionales con los Estados Unidos*, Bogotá, Ed. TEMIS, 2010, pág. 1023. La Sección 4 de la precitada ley establece que:

> No se tendrá por maliciosa, ni como tal se considerará la publicación que se hace en un procedimiento legislativo, judicial, u otro procedimiento cualquiera autorizado por la ley. No se presumirá que es maliciosa la publicación que se hace:
>
> *Primero.*—En el propio desempeño de un cargo oficial.
> *Segundo.*—**En un informe justo y verdadero de un procedimiento judicial, legislativo u oficial, u otro procedimiento cualquiera, o de algo dicho en el curso de dichos procedimientos.**
> *Tercero.*—A un funcionario oficial, apoyada en causa probable, con la intención de servir al procomún, o de conseguir remedio a un perjuicio hecho a un particular. (Énfasis en el original y negrilla suplida). 32 LPRA sec. 3144.

A la luz de lo anterior, la configuración del privilegio del reporte justo y verdadero exige el cumplimiento de los siguientes requisitos: (1) el reporte tiene que ser justo, entiéndase como "justo" aquel que captura la substancia de lo acontecido y considera el probable efecto que tendrá en la mente de un(a) lector(a) y oyente promedio; y (2) "lo publicado tiene que ser cierto; ello desde el punto de vista de que —aun cuando la información que se brinda en el procedimiento judicial, legislativo u oficial sea inherentemente falsa o libelosa— el reportaje o noticia publicada es ´cierta´ por cuanto refleja la verdad de lo expresado o acontecido en el procedimiento llevado a cabo". *Villanueva v. Hernández, supra*, pág. 647. Véase *Mi Gi, Inc. v. Garnelt Massachusetts Broadcasters, Inc.*, 519 N.E.2d 283 (1988); *Murray v. Bailey*, 613 F. Supp. 1276 (1985); *Caraballo v. P.R. Ilustrado, Inc.*, 70 DPR 283 (1949).

Es menester precisar la distinción entre "privilegio" y "defensa", análisis que el profesor José J. Álvarez González aborda con claridad. Según explica:

> Las decisiones puertorriqueñas frecuentemente utilizan el término ´privilegio´ para referirse a situaciones en que la Ley de 1902 ha dispuesto que no habrá responsabilidad. **´Defensa´ es el concepto más preciso y se presta a menos confusión. El término ´privilegio´, en el contexto de litigios por difamación, proviene del *common law*. Su única función es establecer las circunstancias en las que no se impondrá responsabilidad, aun cuando el demandante haya sufrido daños.** W. Keeton, D. Dobbs, R. Keeton y D. Owen, *Prosser and Keeton on the Law of Torts* § 16, págs. 108-09 (5ª ed. 1984). El término ´privilegio´ en el derecho probatorio supone la exclusión de prueba testifical o documental por razones de política pública. Para evitar confusión, por lo tanto, en lo sucesivo se usará el concepto ´defensa´ -absoluta o condicional- para aludir a las situaciones en que la ley impide que un tribunal imponga responsabilidad a un demandado. Ya en Estados Unidos se viene reconociendo que de eso se trata en lo que respecta a las acciones por libelo. Véase id.; B. Santora, *Libel & Privacy* 136 (2ª ed. 1991); D. Elder, *Defamation: A Lawyer's Guide* § 2.2 (1993). (Negrilla suplida). (J.J. Álvarez González, *Derecho constitucional de Puerto Rico y relaciones constitucionales con los Estados Unidos*, Bogotá, Ed. TEMIS, 2010, pág. 1024).

En esa misma línea, el Tribunal Supremo evaluó con anterioridad el caso de autos, y mediante una Opinión de Conformidad, desarrolló el siguiente análisis:

> [E]l **privilegio del periodista** se plantea como el mecanismo apropiado para solicitarle a un tribunal que exima a la prensa de tener que descubrir la identidad de la fuente confidencial que le facilitó determinada información en una acción civil, mientras que **el privilegio del reporte justo y verdadero es una defensa afirmativa** que esgrime una parte demandada para liberarse de responsabilidad legal en una acción civil al amparo de la Ley de Libelo y Calumnia.
>
> .      .      .      .      .      .      .      .      .
>
> **En definitiva, estamos frente a privilegios independientes.** (Énfasis en el original omitido y negrilla suplida). *Torres Rodríguez v. Noticentro de Puerto Rico*, 210 DPR 783, 830 (2022) (Opinión de conformidad del Juez Asociado Señor Colón Pérez a la cual se unió el Juez Asociado Señor Estrella Martínez).

De manera que, si el tribunal determina que la identidad de la fuente periodística es pertinente para la acción de difamación,

deberá acudir al análisis del privilegio del periodista a fin de poder disponer correctamente de la controversia ante su consideración. *Id.*

III.

En su primer señalamiento de error, la parte peticionaria plantea que el foro *a quo* incidió al concluir que la identidad de Richard Roe es pertinente para adelantar su causa de acción por difamación y otra por el Art. 1802 del Código Civil de Puerto Rico. Le asiste la razón. Veamos por qué.

Como relacionamos previamente, en una primera ocasión, el Tribunal de Primera Instancia ordenó, mediante *Resolución* del 11 de agosto de 2021, la notificación de la fuente periodística que divulgó el memorando sin llevar a cabo análisis alguno sobre la pertinencia de la identidad de dicha fuente. En esencia, razonó que el memorando del NIE era un documento confidencial parte del sumario fiscal bajo la Ley 204-2005 y la Ley 20-2017. Así pues, determinó que el privilegio del reporte justo y verdadero invocado por la parte demandada no aplica como defensa ante la divulgación de un memorando confidencial de un sumario fiscal de una investigación en curso.

Posteriormente, se presentó un recurso de *certiorari* en este foro revisor el cual confirmó al Tribunal de Primera Instancia. Aún inconforme, la parte peticionaria acudió al Tribunal Supremo, el cual, en su dictamen, revocó la determinación del Tribunal de Apelaciones.

En esencia, al atender la controversia sobre si correspondía divulgar la identidad de la fuente periodística, el Tribunal Supremo concluyó que se encontraba frente a un análisis incompleto, específicamente carente de una evaluación sobre la **pertinencia** de la identidad de la fuente periodística. *Torres Rodríguez v. Noticentro de Puerto Rico*, *supra*. Por ello, le ordenó al foro primario, en primer

lugar, determinar si, en efecto, la identidad de la fuente periodística es **pertinente para evaluar si la información divulgada respecto al Lcdo. Idelfonso Torres Rodríguez es de naturaleza difamatoria**. En segundo lugar, de entender que la información es pertinente a la causa de acción, el foro primario deberá establecer si se configuran los requisitos de algún privilegio.

En cumplimiento con lo ordenado por el Tribunal Supremo, el foro primario ordenó la celebración de una vista evidenciaria, la cual más adelante fue suspendida. En el interín, se resolvió el caso de *Izquierdo II v. Cruz,* 213 DPR 607 (2024), en el que se reconoció la existencia del privilegio del periodista en Puerto Rico. Por lo cual, el Tribunal de Primera Instancia emitió una *Orden* el 7 de marzo de 2024 concediéndole a las partes un término veinte (20) días para presentar memorandos exponiendo su posición sobre dicho dictamen.

Así las cosas, el 10 de enero de 2025, el foro primario emitió una *Resolución* en la que, sustancialmente reitera lo resuelto en su dictamen del 11 de agosto de 2021. Sin embargo, a poco examinamos la misma, notamos que dicho foro realizó un análisis al margen de la inequívoca directriz del Tribunal Supremo. Pues, le correspondía al foro primario "evaluar si en efecto, ese dato [la identidad de la fuente periodística] es **pertinente para concluir que la información divulgada contra el licenciado Torres Rodríguez era falsa**, y que estaba cobijada o no bajo algún privilegio".

Esbozamos las razones que el foro primario utilizó para determinar que la identidad de Richard Roe es pertinente:

> (1) explicará la **motivación** que tuvo para cometer delito; (2) explicará la **motivación** que tuvo para sacar de un sumario fiscal información privilegiada; y (3) explicará la **motivación** que tuvo para entregarla al señor Alex Delgado; (4) establecer que **vínculo** tenía con el señor Walter Maldonado; (5) explicará que lo **motivó o que beneficio** obtuvo; y (6) explicará qué fue

lo que dijo sobre la investigación al comunicarse con el señor Alex Delgado.[4]

Todo lo anterior demuestra con claridad que las seis (6) razones ofrecidas por el Tribunal de Primera Instancia para sostener que la identidad de la fuente periodística es necesaria para adelantar la causa de acción de difamación, no justifican, en modo alguno, la pertinencia que tuviese la identidad de Richard Roe para **vislumbrar si la información divulgada en la carta del 16 de abril de 2018 era <u>falsa</u>**, conforme lo ordenado por nuestro máximo foro judicial.

En cambio, las razones mencionadas anteriormente, al igual que en la Resolución del 11 de agosto de 2021, se centran en las **<u>motivaciones</u> que guiaron la conducta de Richard Roe**, en un presunto vínculo con el Sr. Maldonado, así como en el supuesto beneficio derivado sus acciones. Además, en su dictamen, el foro primario otorgó particular relevancia al hecho de que la fuente periodística presuntamente incurrió en un acto ilícito tipificado como delito, y enfatizó el carácter confidencial del mismo. En particular, al abordar la pertinencia de revelar la identidad de la fuente periodística, el Tribunal razonó lo siguiente:

> [I]ndependientemente de si las publicaciones en controversias constituyeron un acto de difamación, la alegada entrega del memorando confidencial realizada por Richard Roe fue una <u>conducta ilegal</u> de la cual se alega causó daños a la parte demandante. Por tal motivo, no hay controversia en cuanto a que, para la causa de acción de daños presentada por la parte demandante con Richard Roe, la identidad de este es pertinente. (Énfasis suplido).

A juicio del foro primario, "en un balance de intereses entre la defensa del reporte justo y verdadero **cede ante el alto interés público** de proteger la confidencialidad del sumario fiscal". Sin embargo, en el presente caso, los intereses a sopesar son la libertad de expresión y de prensa que cobija a los periodistas, y el estándar de prueba requerido para todo **individuo** que busca

---

[4] Véase, Apéndice del Recurso de *Certiorari*, pág. 66.

proteger su reputación en una acción por difamación. En ese marco, conviene resaltar que el Departamento de Justicia no forma parte en este litigio ni ha planteado objeciones sobre la confidencialidad del documento. Por el contrario, es la parte recurrida quien alega la supuesta comisión de un delito por parte de Richard Roe al extraer el memorando del sumario fiscal. Asimismo, no hay constancia de que la Agencia haya iniciado una investigación para identificar a la persona que sustrajo el memorando.

Resulta forzoso concluir que la **identidad de la fuente periodística no hace más o menos probable que el contenido de dicha carta sea falso. Más aun, cuando no hay controversia de quien redactó el memorando, y quienes fueron las personas que proveyeron la información para su elaboración**. Recordemos que para que prospere una causa de acción civil por difamación, una figura pública debe demostrar: "que la expresión difamatoria <u>**es falsa**</u>, que se publicó a sabiendas de que era falsa o con grave menosprecio de su falsedad o veracidad, es decir, con malicia real, y que dicha publicación le causó daños reales". *Meléndez Vega v. El Vocero de PR, supra*, pág. 148. Mientras que, para que una figura privada prospere en la acción, basta con demostrar que la conducta del demandado fue negligente. *Id.* pág. 149.

En resumen, y conforme al análisis ordenado por nuestro máximo foro, **la identidad de la fuente periodística <u>carece de pertinencia para concluir que la información divulgada contra el licenciado Torres Rodríguez era falsa.</u>** En otras palabras, su identidad no guarda relación con la evaluación de la veracidad o falsedad del contenido de dicho documento. Por tanto, el primer señalamiento de error se cometió. Dado que este error inicial sobre la pertinencia constituye un requisito previo para analizar el segundo y tercer señalamiento de error, no corresponde discutirlos.

En consecuencia, se deja sin efecto la determinación del foro recurrido respecto a la aplicación del privilegio del periodista y la defensa del reporte justo y verdadero.

IV.

Por los fundamentos antes expuestos, se *expide* el Auto de *Certiorari* y se **revoca** el dictamen recurrido. Se ordena la continuación de los procedimientos.

**Notifíquese inmediatamente.**

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones